IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Joan Sherfel, et al.,

      Plaintiffs,

      v.                       Case No. 2:09-cv-871

Roberta Gassman, et al.,

      Defendants.


OPINION AND ORDER

      This is an action for declaratory and injunctive relief brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq., and the Declaratory Judgment Act, 28 U.S.C. §2201.  The plaintiffs are Nationwide Mutual Insurance Company ("Nationwide"), an Ohio corporation; the Benefits Administrative Committee ("the Committee"), Plan Administrator of the Nationwide-Sponsored Health and Welfare Employee Benefit Plans; and Joan Sherfel, a member of the Committee.  Nationwide is the Plan Sponsor of the Plans, and the Committee is the named fiduciary of the Plans within the meaning of 29 U.S.C. §1002(21).  The Plans are administered in Columbus, Ohio.

      The defendants are Roberta Gassman, Secretary of the State of Wisconsin Department of Workforce Development ("DWD"); Jennifer Ortiz, Administrator of the Equal Rights Division of the DWD; and John Byron Van Hollen, Attorney General of the State of Wisconsin, (collectively referred to in the complaint as the "State of Wisconsin" or "the state").  The Equal Rights Division of the DWD administers the Wisconsin Family and Medical Leave Act ("WFMLA"), Wis. Stat. §103.10.  Leave under the WFMLA is generally unpaid leave.  Wis. Stat. §103.10(5)(a) ("This section does not entitle an

employee to receive wages or salary while taking family leave or medical leave."). However, the WFMLA does provide that "[a]n employee may substitute, for portions of family leave or medical leave, paid or unpaid leave of any other type provided by the employer." Wis. Stat. §103.10(b).

The original complaint in this case was filed on October 5, 2009. On November 18, 2009, defendants filed a motion to dismiss the complaint. However, on February 1, 2010, plaintiffs filed a first amended complaint. Therefore, the motion to dismiss (Doc. No. 30) filed on November 18, 2009, is now moot. In the first amended complaint, plaintiffs allege that Nationwide is the sponsor of the Nationwide Insurance Companies and Affiliates Plan for Your Time and Disability Income Benefits ("the Plan"), which is available to associates of Nationwide and its affiliated entities in the forty-nine states in which they are employed. The Plan provides short-term disability ("STD") income benefits and long-term disability ("LTD") income benefits for employees who become disabled, as that term is defined in the Plan. The STD and LTD Programs do not provide accrued paid leave; rather, they provide disability income benefits to associates who become disabled and are unable to work. The Plan also includes the Your Time Program, which provides paid time off, upon a manager's approval, for any purpose, including vacation, sick leave, and leave under the Family and Medical Leave Act "FMLA" or any similar state law such as the WFMLA. These Plans are alleged to be ERISA plans.

The Plans are funded through the Nationwide Insurance Companies & Affiliates Employee Health Care Trust ("the Trust"), and Nationwide and its affiliates, as well as Nationwide associates, make contributions to the Trust to fund the Plans. The

2

Committee, as Plan Administrator, is given the authority under the Benefits Administrative Committee Charter and the Plan to interpret and administer the Plan in accordance with ERISA and the terms of the Plan, and to authorize the payment of benefits from the Trust.

Plaintiffs further allege that on April 18, 2007, Katharina Gerum, a Nationwide associate employed in Wisconsin, filed a complaint with the DWD against Nationwide alleging that she made a request to receive STD benefits during intermittent time off from work to bond with her newborn child, and that the request was refused. Nationwide had approved her request to take intermittent WFMLA leave and also approved her use of Your Time accrued leave to pay her for the time off, but her request for STD benefits was denied because she was not disabled. The Plan and the Committee were not parties to the Wisconsin administrative proceedings. The matter was assigned to an administrative law judge ("ALJ") for the Equal Rights Division. In a final decision and order dated August 14, 2009, the ALJ concluded that Nationwide violated the WFMLA by not permitting Ms. Gerum to substitute paid STD benefits for unpaid leave under the WFMLA. The ALJ ordered Nationwide to permit Ms. Gerum to substitute paid leave under the STD plan for the eight days of leave she took under the WFMLA, and to restore the eight days of Your Time benefits which she took to cover her leave. The ALJ rejected Nationwide's argument that the associate had no remedy under the STD Plan because Nationwide lacked the authority to order payment from the Plan, and further stated that if there was no provision in the Plan to make the payments required by the WFMLA, then Nationwide must pay for the benefits. Plaintiff alleges that the same ALJ issued a decision in another matter on January 30, 2002, which ordered the substitution of STD benefits for unpaid

3

WFMLA leave.

Plaintiffs further allege that Nationwide asked the Committee whether Ms. Gerum could be permitted to receive STD income benefits for leave under the WFMLA and whether the eight days could be restored to her Your Time account so as to comply with the ALJ's order. The Committee denied these requests. Nationwide alleges that if the Committee paid the STD benefits or restored the time off to Ms. Gerum's Your Time account, it would violate its fiduciary duty to the Plan participants and beneficiaries by acting contrary to the terms of the Plan. Since Nationwide was unable to pay benefits under the STD plan or to credit Ms. Gerum's Your Time account, Nationwide settled the matter with Ms. Gerum, but did not pay her STD benefits or credit her Your Time account.

Plaintiffs allege that the State of Wisconsin's continuing enforcement position is that the WFMLA is not pre-empted by ERISA, and that therefore Nationwide associates in Wisconsin will continue to make demands to substitute STD benefits for unpaid WFMLA leave. Plaintiffs allege that on October 5, 2009, another associate in Wisconsin inquired about substituting STD benefits for unpaid WFMLA leave during the period of her maternity leave, which commenced on January 15, 2010. Nationwide alleges that it has over 200 employees in Wisconsin who participate in the STD Program and who may claim a right to receive the payment of STD benefits under the WFMLA.

In Count I of the first amended complaint, plaintiffs assert a claim for injunctive relief. Plaintiffs allege that the State of Wisconsin's application of the WFMLA substitution provision to the Plan has caused and will cause irreparable harm to plaintiffs by putting plaintiffs in the position of choosing between violating

4

Wisconsin law and violating ERISA. Plaintiffs allege that the State's interpretation and application of the substitution provision forces plaintiffs to violate the terms of the Plan by paying STD benefits to plan participants who do not qualify for those benefits. Plaintiffs rely on the Supremacy Clause of the United States Constitution and ERISA's preemption provision, 29 U.S.C. §1144(a), which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. §1144(a). Plaintiffs allege that the WFMLA substitution provision conflicts with and is preempted by ERISA because, as interpreted, it requires payment of STD income benefits to associates who are not disabled rather than deferring to Plan documents, interferes with the exclusive claims administration procedure established under ERISA, and prevents the Committee from determining eligibility for benefits pursuant to ERISA and the terms of the Plan.

Plaintiffs allege that they face additional claims by Nationwide's 200 Wisconsin associates in the future, as well as an immediate and continuing threat of enforcement actions under the WFMLA. Plaintiffs allege that if an injunction is not issued, Nationwide will have to expend time and resources defending itself during hearings in which the State of Wisconsin will assert jurisdiction under the WFMLA despite ERISA preemption. Plaintiffs allege that since the Equal Rights Division hearings apply only to employers, the Committee has no opportunity to protect its interests as Plan Administrator. Plaintiffs allege that since Oregon also has a substitution provision, but excludes disability benefits from the definition of accrued paid leave, plaintiffs are faced with having to administer the terms of the Plan and pay

benefits from the Trust in a non-uniform manner, thereby violating ERISA's goal of uniform plan design and administration.  Plaintiffs request an order prohibiting defendants from processing, investigating and adjudicating claims for benefits that are governed exclusively by ERISA, and prohibiting defendants from initiating or participating in a state court action that attempts to apply or enforce the WFMLA substitution provision against plaintiffs with regard to STD benefits.

In Count II of the first amended complaint, plaintiffs seek a declaratory judgment that the Plan is an ERISA plan, that the substitution provision of the WFMLA is preempted to the extent that it is interpreted and applied to require the payment of disability income benefits to associates who are not entitled to benefits under the terms of the Plan and/or ERISA, that the Committee is not required to grant substitution requests for STD income benefits to associates who are not disabled, and that Nationwide is not required to pay substitution requests for STD income benefits made by non-disabled associates out of general assets.

In Count III of the first amended complaint, the Committee, as Plan Administrator and a fiduciary under ERISA, requests instructions from the court that it may continue to administer the Your Time, STD and LTD income benefits in accordance with Plan documents and ERISA without regard to the WFMLA, as well as instructions from the court with respect to the proper handling of its responsibility over the Trust.

This matter is before the court on the motion of defendants (Doc. No. 47) to dismiss the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted.

I. Standards for Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Id.

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim. Campbell v. PMI Food Equipment Group, Inc., 509 F.3d 776, 780 (6th Cir. 2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

7

possibility and plausibility of entitlement to relief. <u>Id</u>.
Determining whether a complaint states a plausible claim for relief
is "a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense." <u>Id</u>. at 1950.
Where the facts pleaded do not permit the court to infer more than
the mere possibility of misconduct, the complaint has not shown
that the pleader is entitled to relief as required under
Fed.R.Civ.P. 8(a)(2). <u>Ibid</u>.

In evaluating a motion to dismiss, a court generally is
limited to the complaint and exhibits attached thereto. <u>Amini v.
Oberlin College</u>, 259 F.3d 493, 502 (6th Cir. 2001). The court may
consider a document or instrument which is attached to the
complaint, or which is referred to in the complaint and is central
to the plaintiff's claim. Fed.R.Civ.P. 10(c)("[a] copy of any
written instrument which is an exhibit to a pleading is a part
thereof for all purposes."); <u>Doe v. SexSearch.Com</u>, 551 F.3d 412,
416 (6th Cir. 2008)("While our analysis primarily focuses on the
complaint, 'matters of public record, orders, items appearing in
the record of the case, and exhibits attached to the complaint ...
may be taken into account.'")(quoting <u>Amini</u>, 259 F.3d at 502).
However, courts may also consider matters of public record. <u>New
England Health Care Employees Pension Fund v. Ernst & Young, LLP</u>,
336 F.3d 495, 501 (6th Cir. 2003)("A court that is ruling on a Rule
12(b)(6) motion may consider materials in addition to the complaint
if such materials are public records or are otherwise appropriate
for the taking of judicial notice.").

## II. Standing

Defendants argue that the first amended complaint should be
dismissed because plaintiffs have failed to allege sufficient facts

8

to demonstrate that they have standing to pursue their claims. To satisfy Article III's standing requirements, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. V. Laidlaw Environmental Servs. (TOC) Inc., 528 U.S. 167, 180-81 (2000)(quoting Lujan v. Defenders of wildlife, 504 U.S. 555, 560-61 (1992)). Standing is determined as of the time the complaint is filed. Cleveland Branch, National Assoc. For the Advancement of Colored People v. City of Parma, Ohio, 263 F.3d 513, 525 (6th Cir. 2001). General allegations of injury may suffice to demonstrate standing. White v. United States, 601 F.3d 545, 551 (6th Cir. 2010).

To have standing to seek an injunction in federal court, a plaintiff must show a non-speculative threat that "he will again experience injury as a result" of the alleged wrongdoing." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983). To have standing to seek federal declaratory relief, a plaintiff must "demonstrate actual present harm or the significant possibility of future harm." Fieger v. Ferry, 471 F.3d 637, 643 (6th Cir. 2006).

Plaintiffs' claims are based on ERISA's preemption provision. ERISA states that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. 29 U.S.C. §1144(a). "The term 'State law' includes all laws, decisions, rules, regulations, or

9

other State action having the effect of law, of any State." 29 U.S.C. §1144(c)(1). Plaintiffs allege that the WFMLA substitution is preempted to the extent that it unlawfully requires the payment of benefits from the Plan contrary to ERISA.

Defendants argue that plaintiffs have failed to allege an "injury in fact." They contend that plaintiffs face no imminent injury at this point because the Gerum case is over. They argue that any injury sustained by plaintiffs was due to the Gerum decision, not to the provisions of the WFMLA. Defendants further argue that it is speculative what enforcement position the State of Wisconsin would take in the future, and that any adverse effects suffered by plaintiffs resulted from the Gerum decision, which they allege is not binding on future proceedings.

Since the ALJ in Gerum construed and applied the WFMLA substitution provision in rejecting plaintiffs' preemption arguments and in ordering relief for the associate in that case, it is not possible to divorce the ALJ's adverse holding from the WFMLA substitution provision as the sole source of injury to plaintiffs. Defendants' argument that plaintiffs fail to allege that the WFMLA substitution provision is preempted is incorrect. See Am. Compl. ¶ 43 ("application of the substitution provision in contravention of the Plan documents is preempted by ERISA"); ¶ 45 (discussing §1144(a) preemption); ¶ 46 ("The Wisconsin substitution provision, as interpreted to require the payment of STD income benefits to someone who is not disabled, as defined, is preempted by ERISA[.]"). The injuries alleged by plaintiffs do not end with the Gerum case. Rather, the circumstances of the Gerum case provide factual support for plaintiffs' claim that a similar enforcement of the WFMLA substitution provision is likely in future cases.

10

In addition, plaintiffs' concerns about the interpretation and
application of the WFMLA substitution provision are not based
solely on the Gerum decision.   In Aurora Medical Group v.
Department of Workforce Development, Equal Rights Division, 236
Wis.2d 1, 612 N.W.2d 646 (2000), the Wisconsin Supreme Court
addressed the question of whether the WFMLA substitution provision
was preempted by ERISA.   The court concluded that the WFMLA
substitution provision "has no reference to nor clear connection
with, ERISA plans." 236 Wis.2d at 15.  The court further held that
the substitution provision of the WFMLA was not preempted by ERISA.
Id. At 25.  Since the highest court of the State of Wisconsin has
held that the WFMLA substitution provision is not preempted by
ERISA, it is highly likely that any ALJ called upon to consider an
employer's preemption defense would be convinced to reject that
defense.  While the decision in Gerum may not be binding in future
DWD administrative proceedings, the WFMLA substitution provision,
as interpreted by the Wisconsin Supreme Court in Aurora Medical
Group would be.  In light of the holding in Aurora Medical Group,
defendants' argument that plaintiffs' alleged injuries are purely
speculative and stem solely from the Gerum decision, not the WFMLA
substitution provision, is unavailing.  Plaintiffs have pleaded
sufficient facts to show the existence of an actual controversy,
not simply a subjective fear of future enforcement of the WFMLA
substitution provision.

Plaintiffs have alleged sufficient facts to show that
enforcement of the WFMLA substitution provision by requiring them
to pay benefits from the STD plan would place them in an untenable
position.  Plaintiffs have alleged that they are fiduciaries of the
Plan, which is allegedly governed by ERISA.  Under ERISA, a plan

must "specify the basis on which payments are made to and from the plan," 29 U.S.C. §1102(b)(4), and the fiduciaries of the plan must administer the plan "in accordance with the documents and instruments governing the plan," 29 U.S.C. §1104(a)(1)(D), making payments to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan." 29 U.S.C. §1002(8). Plaintiffs allege that the ALJ in the <u>Gerum</u> case invoked the substitution provision of the WFMLA, ordered that STD benefits be paid to an associate who was not disabled, and further ordered that her Your Time account be credited for the eight days of leave she took under the WFMLA, contrary to the terms of the Plan and contrary to their fiduciary obligations as plan administrators. Plaintiffs argue that the continued enforcement of the WFMLA substitution provision places them in a position of choosing whether to violate Wisconsin law by refusing to honor an associate's request for substitution or to violate ERISA by awarding benefits from the Trust in violation of the terms of the Plan and their fiduciary duties. <u>See</u> <u>Boggs v. Boggs</u>, 520 U.S. 833, 844 (1997)(recognizing that preemption is required where compliance with both federal and state regulations is a physical impossibility).

Plaintiffs allege that because of the WFMLA substitution provision, they face an "immediate and continuing threat of an enforcement action under the WFMLA." Am. Compl., ¶ 49. Plaintiffs allege that Nationwide employs 200 associates in Wisconsin. It is thus highly likely that Nationwide will be faced with demands to substitute STD benefits for unpaid WFMLA leave in the future. In fact, plaintiffs have alleged that since the filing of this action, another Nationwide associate in Wisconsin who went on maternity leave on January 15, 2010, claimed that the WFMLA allows

12

substitution of STD benefits for bonding time following the standard six to eight weeks of disability maternity leave. Am. Compl., ¶¶ 32-35. The facts alleged in the complaint are sufficient to allege an injury in fact that is both concrete and particularized, as well as actual or imminent, not conjectural or hypothetical.

Defendants argue that plaintiffs could have appealed the decision in Gerum. However, defendants have cited no authority for the proposition that plaintiffs were required to pursue the preemption claims which they have advanced in this case in the Wisconsin courts. In Thiokol Corp. V. Department of Treasury, 987 F.2d 376 (6th Cir. 1993), the plaintiffs brought an ERISA action challenging the validity of state tax provisions on preemption grounds. The court held that since the plaintiffs' claims for injunctive and declaratory relief under 29 U.S.C. §1132(a)(3) were brought under ERISA, the exclusive federal jurisdiction provision of ERISA, 29 U.S.C. §1132(e)(1), applied, and the state courts lacked jurisdiction to decide plaintiffs' claims. Id. at 380. Under the reasoning in Thiokol, plaintiffs could not have asserted the §1132(a)(3) claims which they have advanced in the instant case in the Wisconsin courts.

Plaintiffs also explain that they did not appeal the Gerum matter because they wanted to avoid the invocation of the abstention doctrine under Younger v. Harris, 401 U.S. 37 (1971) when they filed the instant case. Of course, the fact that plaintiffs did not exhaust any state appeals which may have been available following the Gerum decision does not mean that the state proceedings are still ongoing for purposes of Younger abstention. See Norfolk & Western Railway Co. v. Public Utilities Commission of

13

<u>Ohio</u>, 926 F.2d 567, 572 (6th Cir. 1991).

In addition, plaintiffs have alleged as part of their injury in this case that unless an injunction is issued, they will be required to defend WFMLA claims in Wisconsin administrative proceedings, and that the existence of these proceedings, insofar as they determine eligibility for benefits under ERISA, poses a conflict with federal law. Plaintiffs have alleged that the WFMLA substitution provision is preempted not only insofar as it may be construed by Wisconsin officials as requiring the payment of disability benefits contrary to the terms of the Plan, but also insofar as it provides an enforcement scheme to obtain those benefits. The Supreme Court has noted that "[t]he purpose of ERISA is to provide a uniform regulatory scheme over employee benefit plans." <u>Aetna Health Inc. V. Davila</u>, 542 U.S. 200, 208 (2004). The Court has held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted. <u>Id.</u> at 209. The preemptive force of ERISA is not limited to situations in which a state cause of action precisely duplicates a cause of action under 29 U.S.C. §1132(a). <u>Id.</u> at 215. Plaintiffs allege that they will sustain injury because they will be forced to expend valuable time and resources defending their position during hearings over which the State of Wisconsin will improperly assert jurisdiction. Am. Compl., ¶ 50. If, as plaintiffs allege, the administrative proceedings and civil action authorized under the WFMLA, Wis. Stat. §103.10(12) and (13), are preempted because they duplicate the ERISA enforcement procedures under 29 U.S.C. §1132(a)(1)(B), then it is logical to conclude that exhaustion of the preempted

14

Wisconsin procedures should not be a prerequisite to the assertion of plaintiffs' claims in this case.

Plaintiffs have also alleged that they face an imminent threat of injury due to Wisconsin's interpretation of the WFMLA substitution provision because it will impose additional burdens in the administration of the Plan. "The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans." Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 698 (6th Cir. 2005). State regulation of plans creates the potential for fifty or more conflicting governance structures. Helfman v. GE Group Life Assurance Co., 573 F.3d 383, 390 (6th Cir. 2009). Since Nationwide and its affiliated entities employ associates in forty-nine states, Am. Compl. ¶ 5, plaintiffs allege that they will incur additional administrative expenses by having to monitor the different requirements imposed by Wisconsin law.

Defendants argue that any injury to plaintiffs was the act of the ALJ in Gerum, not any act of the defendants. They contend that the complaint fails to allege that they personally committed any act or practice which violated ERISA. However, the defendants are named in their official capacities, not as individuals. It is not necessary for plaintiffs to allege that the defendants have personally performed acts which resulted in injury to plaintiffs in the past. The allegations in the complaint are sufficient to indicate that plaintiffs are likely to be injured by the continued enforcement of the WFMLA substitution provision by Wisconsin officials working within the DWD. Although defendants summarily allege that the Gerum decision does not represent their enforcement positions, they do not explain how they could avoid taking a

15

similar enforcement posture in the future in light of the <u>Aurora Medical Group</u> decision.

Defendants also argue that they are not in a position to provide a remedy to the plaintiffs. The defendants have been named as defendants in their official capacities because, in the case of defendants Gassman and Ortiz, they occupy positions of authority within the DWD, and because their positions would enable them to ensure that the DWD, the state agency responsible for the administration of the WFMLA, will comply with any order for injunctive or declaratory relief which might be issued in this case if plaintiffs prevail.

Defendant Gassman is the Secretary of the DWD, and defendant Ortiz is the Administrator of the Equal Rights Division of the DWD, which is in charge of implementing the remedies available under the WFMLA.  The DWD is charged with receiving and investigating complaints under the WFMLA, holding hearings on those complaints, rendering a decision on the complaint, and ordering remedies for violations, including providing requested family or medical leave, reinstating an employee, providing back pay and paying reasonable attorney fees to the complainant. Wis. Stat. §103.10(12). The DWD is also authorized to bring a civil action in a Wisconsin circuit court against an employer to recover damages caused by an employer's violation of Wis. Stat. §103.10(11), which prohibits interference with an employee's exercise of his or her rights under the WFMLA or retaliation for exercising those rights. <u>See</u> <u>Harvot v. Solo Cup Co.</u>, 320 Wis.2d 1, 15-16, 768 N.W.2d 176 (2009). In short, defendants Gassman and Ortiz are the Wisconsin officials charged with supervision of the DWD and the Equal Rights Division within the DWD, respectively.  Since the DWD is charged with

16

conducting the administrative enforcement proceedings authorized under the WFMLA, including enforcement of the WFMLA substitution provision at issue in this case, these defendants are also in a position to make sure that the DWD and the Equal Rights Division complies with any injunctive relief ordered by this court.

Defendant Van Hollen is the Attorney General of the State of Wisconsin. He is the head of the Wisconsin Department of Justice. Wis. Stat. §15.25. The Wisconsin Department of Justice is authorized by statute to appear for and represent the state or any state agency, or to prosecute or defend any agency or official in any matter, civil or criminal, in any court. Wis. Stat. §165.25(1)(m). Since the Department of Justice, under the Attorney General, would have the authority to appear on behalf of an official of the DWD or the Equal Rights Division in an action to enforce the provisions of the WFMLA, he is also in a position to ensure compliance with the terms of any order providing for injunctive and declaratory relief which may be issued in this case. Defendants Gassman, Ortiz and Van Hollen are proper defendants to this action.

Defendants also argue that the injunctive and declaratory relief sought by plaintiffs is not available to them. Defendants rely on <u>NGS American, Inc. V. Jefferson</u>, 218 F.3d 519 (6th Cir. 2000). In that case, NGS, the plan administrator, brought an action for injunctive and declaratory relief against a plan participant in federal court, seeking to avoid the filing of an action by the participant in a Florida state court on the alleged ground that any state law claims advanced by the participant would be preempted under 29 U.S.C. §1144(a). NGS invoked 29 U.S.C. §1132(a)(3), which permits suits by a fiduciary "(A) to enjoin any

17

act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. §1132(a)(3). NGS argued that since §1144(a) was a "provision of this subchapter," it could seek injunctive and declaratory relief based on its preemption argument. The court held that since the participant did not violate the plan or ERISA by filing suit in state court, the action could not be characterized as one to enforce the terms of the plan. Id. at 530. The court further held that NGS's preemption argument was at most a defense to be raised in the state court action, and did not furnish a basis for injunctive and declaratory relief against the state court proceedings. Id.

Jefferson is distinguishable from the instant case, because here, plaintiffs seek to determine the effect of ERISA preemption on the WFMLA, a state statute. In Thiokol Corp., the plaintiffs brought an ERISA action challenging state tax provisions on preemption grounds. The court noted that 29 U.S.C. §1132(a)(3)(A) expressly creates an injunctive remedy, and that 29 U.S.C. §1132(a)(3)(B) had been interpreted by the Supreme Court in Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 27 n. 31 (1983), as creating a cause of action for declaratory judgment. 987 F.2d at 380. The court in Jefferson recognized that the claims in Thiokol were distinguishable because "the action in that case was brought to determine the effect of ERISA preemption on existing state regulations. Challenging those regulations by violating them and then raising ERISA preemption as a defense in a state enforcement

18

action would have risked breaking the law." Jefferson, 218 F.3d at 529.

In Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983), the Supreme Court recognized that it had jurisdiction over a declaratory judgment action brought by employers seeking a declaration that certain state laws were preempted by ERISA.  The Court stated:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.... A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

463 U.S. at 96 n. 14.  See also Denny's, Inc. v. Cake, 364 F.3d 521, 524-28 (4th Cir. 2004)(§1132(a)(3) permits an ERISA fiduciary to bring an action to enforce ERISA's preemption provision by way of injunction against the application of state regulations that require acts inconsistent with ERISA).  Plaintiffs have alleged that they are fiduciaries of the Plan under ERISA. Am. Compl. ¶¶ 2-3.

In addition, plaintiffs argue that this court has jurisdiction to entertain an action brought by fiduciaries to ask for instructions from the court as to whether they may comply with a state law.  See Denny's, 364 F.3d at 525 (under §1132(a)(3)(B), a fiduciary of a plan covered by ERISA may bring a declaratory judgment action in federal court to determine whether the plan's trustees may comply with a state law)(citing Franchise Tax Bd., 463 U.S. at 26-27).

The court concludes that the allegations of the amended

19

complaint are sufficient to allege standing on the part of the plaintiffs, and this branch of defendants' motion to dismiss is not well taken.

III. Eleventh Amendment Immunity

Defendants argue that the instant action must be dismissed on the ground of Eleventh Amendment immunity.  The Eleventh Amendment of the United States Constitution generally bars suits by citizens of a state against a state in federal court.  League of Women Voters of Ohio v. Brunner, 548 F.3d 463, 474 (6th Cir. 2008).  A suit against a state official in his official capacity is deemed to be a suit against the state for purposes of the Eleventh Amendment. Cady v. Arenac County, 574 F.3d 334, 344 (6th Cir. 2009).  However, an exception to this rule has been recognized if the official-capacity suit seeks only prospective injunctive or declaratory relief.  Id. (citing Papasan v. Allain, 478 U.S. 265, 276-78 (1986)); see also Ex parte Young, 209 U.S. 123 (1908).  In determining whether the exception applies, this court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland Inc. V. Public Service Comm'n of Maryland, 535 U.S. 635, 645 (2002)(quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)). The inquiry "into whether a suit lies under Ex parte Young does not include an analysis of the merits of the claim." Id. at 646.  An allegation of an ongoing violation of federal law is ordinarily sufficient.  Coeur d'Alene, 521 U.S. at 281.

In the instant case, plaintiffs have sued defendants in their official capacities and seek only prospective injunctive and declaratory relief.  Defendants argue that the injunctive and

declaratory relief sought by plaintiffs is really for the purpose of addressing past acts or injury resulting from the _Gerum_ decision.  However, the complaint indicates that plaintiffs are not seeking monetary damages.  Under the WFMLA, the State of Wisconsin simply provides a complaint procedure and forum for the litigation of claims for substituted leave brought by an employee against his or her employer, and no payment from the state treasury to employees or employers is involved.  Plaintiffs have referred to the _Gerum_ matter in their complaint to illustrate factually how the WFMLA substitution provision has been interpreted and enforced by Wisconsin officials, and as factual support for why the legal position adopted by Wisconsin officials allegedly poses a threat to the Plan and its lawful administration under ERISA.  However, plaintiffs do not request any injunctive relief in their complaint specifically in regard to the _Gerum_ matter, which has been settled.  Rather, plaintiffs allege that "[i]n the future, if a Wisconsin associate is not disabled, as defined, but qualifies for WFMLA leave, the State of Wisconsin will order the payment of STD income benefits to that associate if she files a claim with the State of Wisconsin alleging that Nationwide refused a request for substitution of STD income benefits[,]" thus forcing Nationwide to defend such claims in enforcement actions under the WFMLA.  Am. Compl., ¶¶ 48-50.

Plaintiffs are seeking prospective injunctive relief barring the application of the WFMLA to claims against the Plan, including the use of the WFMLA enforcement mechanisms to litigate claims for the substitution of benefits against the Plan, on the basis of ERISA preemption.  Plaintiffs have alleged that the WFMLA substitution provision, insofar as it has been interpreted bo

require the payment of STD income benefits to an associate who is not disabled, as defined in the Plan, conflicts with federal law and is pre-empted by ERISA.  Am. Complaint, ¶¶ 46-47.  A similar claim was asserted in the Verizon case, where Verizon sought injunctive and declaratory relief on the ground that the Commission's order requiring the payment of reciprocal compensation was pre-empted by federal law.  The Supreme Court stated that this "prayer for injunctive relief–that state officials be restrained from enforcing an order in contravention of controlling federal law–clearly satisfies our 'straightforward inquiry.'" Verizon, 535 U.S. at 645.

Plaintiffs also request a declaratory judgment that the substitution provision of the WFMLA is pre-empted by ERISA.  A similar prayer for declaratory relief was also advanced in Verizon. The Supreme Court noted that although the prayer for declaratory relief sought "a declaration of the past, as well as the future, ineffectiveness of the Commission's action" which might affect the past financial liability of private parties, no past liability of the state or its officers was at issue, and that "[i]nsofar as the exposure of the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction." Id. at 646 (emphasis in original). See also Commonwealth Edison Co. v. Vega, 174 F.3d 870, 871-72 (7th Cir. 1999)(action against Illinois official in her official capacity seeking injunctive and declaratory relief on the basis that Illinois statute was pre-empted by ERISA and was therefore unenforceable under the Supremacy Clause of the Constitution was not barred by the Eleventh Amendment); Cigna Healthplan of Louisiana, Inc. V. State of Louisiana ex rel. Ieyoub, 82 F.3d 642, 644 n. 1 (5th Cir.

1996)(action against state official seeking injunctive relief and declaratory judgment that state law was pre-empted by ERISA was not barred by the Eleventh Amendment); Thiokol, 987 F.2d at 382 (claims based on ERISA preemption asserted against state officials in their official capacities for prospective declaratory and injunctive relief are not barred by the Eleventh Amendment). Here, if plaintiffs prevail on their claim for declaratory relief, such a declaration would likely conflict with the decision of the ALJ in the Gerum proceedings, but it would not result in any monetary consequences to the State of Wisconsin.

Plaintiffs' claims in the instant case are not barred by the Eleventh Amendment.

## IV. Unclean Hands, Lack of Candor and Waiver

### A. Unclean Hands

Defendants argue that the complaint should be dismissed based on the doctrine of unclean hands, lack of candor on the part of the plaintiffs, and waiver. The doctrine of unclean hands may be invoked by a court to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party. Performance Unlimited, Inc. V. Questar Publishers, Inc., 52 F.3d 1373, 1383 (6th Cir. 1995). The doctrine requires that the alleged misconduct on the part of the plaintiff relate directly to the transaction about which the plaintiff has made a complaint; in other words, the plaintiff's conduct must have an immediate and necessary relation to the equity that he seeks in respect to the matter in litigation. Id. The conduct constituting unclean hands must be established by clear, unequivocal and convincing evidence. Kearney & Trecker

23

<u>Corp. V. Cincinnati Milacron Inc.</u>, 562 F.2d 365, 371 (6th Cir. 1977).

Defendants allege that plaintiffs are guilty of unclean hands because they sought and obtained an <u>ex parte</u> temporary restraining order in the instant case which restrained defendants from commencing any action in Wisconsin courts under Wis. Stat. §227.60. However, such conduct has nothing to do with the merits of plaintiffs' claims in this case, such as whether the WFMLA substitution provision is pre-empted by ERISA, or whether the Plan fiduciaries can comply with orders made pursuant to the substitution provision which are issued by Wisconsin courts or the DWD while still complying with the terms of the Plan and ERISA.

Further, the process of obtaining a temporary restraining order without prior notice is authorized under Fed.R.Civ.P. 65. That rule provides that a court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed.R.Civ.P. 65(b)(A) and (B).

Here, plaintiffs argued that an <u>ex parte</u> order could issue where notice to the defendant would render fruitless further prosecution of the matter, citing <u>Technology Safety Systems, Inc. V. Depinet</u>, 11 F.3d 641, 650 (6th Cir. 1993). Plaintiffs noted that under Wis. Stat. §227.60, where an action for an interlocutory injunction is commenced in federal court to restrain any department or officer of the state from enforcing or administering any

24

Wisconsin statute, the department, officer, or attorney general may bring a suit to enforce the statute in the circuit court of Dane County at any time before the hearing on the application for an interlocutory injunction in federal court, and the circuit court is then required to issue a stay of the federal court proceedings pending resolution of the state court action.  Plaintiffs argued that the pendency of a state action would implicate the abstention doctrine set forth in <u>Younger v. Harris</u>, or the Anti-Injunction Act, 28 U.S.C. §2283.  In other words, giving defendants notice of the motion for a temporary restraining order filed in this court would have given them the opportunity to file an action in the Wisconsin circuit court, thus depriving plaintiffs of their chosen forum.  In filing the motion for an <u>ex parte</u> temporary restraining order, plaintiffs were following the suggestion of the Fourth Circuit in <u>Denny's</u>, 364 F.3d at 530-31, that a district court could eliminate the potential for a dispute under the Anti-Injunction Act by issuing a temporary restraining order against the filing of a state court suit while considering a motion for a preliminary injunction.

In addition, there is no information currently before the court that the defendants were prejudiced by the issuance of an <u>ex parte</u> temporary restraining order.  Rule 65 provides that upon two days' notice to the plaintiff who obtained the order without notice, and adverse party may appear and move to dissolve or modify the order.  Fed.R.Civ.P. 65(b)(4).  Defendants did not move to dissolve the temporary restraining order, but instead entered into a stipulation with the plaintiffs agreeing that it could remain in effect until the court holds a preliminary injunction hearing.  Defendants have not met their burden of demonstrating that the

complaint should be dismissed under the unclean hands doctrine.

B. Duty of Candor

Defendants argue that plaintiffs breached a duty of candor to the court in filing the instant action and requesting a temporary restraining order. The phrase occurs in the context of Fed.R.Civ.P. 11(b), which, the Sixth Circuit has noted, imposes on litigants a "continuing duty of candor" and authorizes sanctions when a litigant continues "to insist upon a position that is no longer tenable." Rentz v. Dynasty Apparel Industries, Inc., 556 F.3d 389, 395 (6th Cir. 2009)(quoting Ridder v. City of Springfield, 109 F.3d 288, 293 (6th Cir. 1997)). Defendants have filed no motion for sanctions under Rule 11. Although defendants cite numerous examples of how plaintiffs allegedly breached a duty of candor to the court, they have failed to show why any of those alleged instances warrant dismissal of the complaint.

For example, defendants take issue with the fact that plaintiffs filed the instant action in Ohio rather than Wisconsin. However, as alleged in the complaint, ERISA permits the filing of an enforcement action in federal court in any district where the plan is administered. Since the Plan is administered in Columbus, Ohio, there is nothing improper about filing the action here. Defendants also note that a notice of related case was filed with the complaint in light of the fact that this court also presided over McGoldrick v. Bradstreet, Case No. 2:08-cv-01 (S.D.Ohio), a case which also involved the Nationwide Plan. It was not improper for plaintiffs to file such a notice, as required by Local Rule 3.1 of the Southern District of Ohio.

Defendants also argue that plaintiffs misled this court by failing to inform the court that Nationwide had filed a notice of

removal of the Gerum proceedings in a federal district court in Wisconsin.  That court ordered that the Gerum proceedings be remanded to the DWD on the grounds that the removal was untimely and that the complete preemption requirements for removal were not met.  However, the order entered by the federal court in Wisconsin in the Gerum case, which has been settled, has no bearing on the instant case, which was not removed from a state court, but rather was filed by plaintiffs in this court in the first instance. Defendants also fault plaintiffs for failing to seek judicial review of the Gerum decision by Wisconsin courts.  However, plaintiffs were not required to refrain from entering into a settlement agreement with Ms. Gerum, nor were they required to litigate their ERISA claims in the Wisconsin state courts.

Defendants argue that plaintiffs misled this court by referring to the actions of the ALJ in the Gerum matter as the actions of "Wisconsin" and/or the defendants.  Plaintiffs note that in Jicha v. State of Wisconsin Department of Industry, Labor and Human Relations, Equal Rights Division, 169 Wis.2d 284, 291-92, 485 N.W.2d 256 (1992), the Supreme Court of Wisconsin rejected the argument that the decision of a single hearing examiner was not the decision of the agency, and concluded that administrative decisions concerning the WFMLA are those of the agency.  Defendants also contend that plaintiffs misled the court by failing to refer to an April 30, 2007, letter from Nationwide's counsel in which he argued that since Nationwide recognized the distinction between disability and non-disability related WFMLA leaves, the WFMLA's substitution provision should not be applied to Nationwide's STD benefits.  The court fails to see how this letter is inconsistent with plaintiffs' position in the instant case.  The court notes that Nationwide's

27

position in the Gerum matter was summarized in an e-mail dated May 10, 2007, which is attached to the first amended complaint as Exhibit K. The e-mail notes: "The R [respondent Nationwide] contends STD benefits do not constitute leave and she is not eligible for the benefit because she is not disabled." Ex. K.

Defendants also submit that Nationwide misrepresented the nature of its settlement with Ms. Gerum in a letter dated September 10, 2009, to an Equal Rights Division compliance officer. The letter reported, "The parties have entered into a private settlement that makes Ms. Gerum whole as required by paragraph 1 of the Order and which pays Ms. Gerum's reasonable attorney's fees and costs as required by paragraph 2 of the Order." The letter does not state that she was paid STD benefits from the Plan, or that her Your Time account was restored. Plaintiffs allege in the amended complaint that since "Nationwide was faced with an Order with which it could not comply, the Company settled the matter with the associate through a monetary payment (outside of the Plan), which the parties agreed made the associate whole, but the Company did not restore time to her Your Time account as ordered by the ALJ." Am. Compl., ¶ 24. The court fails to see how plaintiffs were anything less than candid with the court or with the Wisconsin officials in regard to the nature of the settlement with Ms. Gerum.

Defendants also argue that plaintiffs misrepresented the need for a restraining order to prevent defendants from filing an action in the Wisconsin court pursuant to Wis. Stat. §227.60 and disrupted the balance of federalism by thwarting a state court action by defendants. Although defendants obviously disagree with the procedural course taken by plaintiffs, they have failed to show that plaintiffs acted improperly or that plaintiffs breached a duty

28

of candor to the court in advancing their position.  Defendants'
argument that the complaint should be dismissed for failure to
satisfy a duty of candor to the court is not well taken.

C. Waiver

Defendants also argue that plaintiffs have waived their right
to pursue their ERISA claims.  Waiver is an affirmative defense
under Fed.R.Civ.P. 8(c).   It does not provide a ground for
dismissal of the complaint.  See Tamiami Partners, Ltd. ex rel.
Tamiani Dev. Corp. v. Miccosukee Tribe of Indians of Florida, 177
F.3d 1212, 1220 n. 5 (11th Cir. 1999)(declining to consider the
issue of waiver in ruling on a motion to dismiss).

Defendant argues that plaintiffs waived their right to pursue
their ERISA claims as a result of the way ERISA preemption was
argued to the ALJ in the Gerum matter and by failing to seek
judicial review of the Gerum decision.  However, defendants have
cited no authority for the proposition that plaintiffs were
required to exhaust their Wisconsin judicial remedies prior to
filing the instant action for prospective injunctive and
declaratory relief.  Defendants' other waiver argument is akin to
judicial estoppel, an equitable doctrine which holds that "where a
party assumes a certain position in a legal proceeding, and
succeeds in maintaining that position, he may not thereafter,
simply because his interests have changed, assume a contrary
position, especially if it be to the prejudice of a party who has
acquiesced in the position formerly taken by him." New Hampshire
v. Maine, 532 U.S. 742, 749 (2001).  The doctrine of judicial
estoppel bars a party from asserting a position that is contrary to
one that the party has asserted under oath in a prior proceedings,
where the prior court adopted the contrary position either as a

preliminary matter or as part of a final disposition.  <u>Lorillard Tobacco Co. V. Chester, Willcox & Saxbe, LLP</u>, 546 F.3d 752, 757 (6th Cir. 2008).  Here, it is clear from the ALJ's decision in the <u>Gerum</u> matter, Exhibit N to the amended complaint, that Nationwide argued the theory of ERISA preemption, and that the ALJ rejected that argument.  The doctrine of judicial estoppel does not apply here to bar plaintiffs from pursuing the claims advanced in the instant case.

<u>V. Conclusion</u>

In accordance with the foregoing, the defendants' motion to dismiss the complaint (Doc. 30) is denied as moot.  Defendants' motion to dismiss the amended complaint (Doc. 47) is denied.

Date: September 27, 2010          <u>          s/James L. Graham          </u>
                                  James L. Graham
                                  United States District Judge

30