IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Joan Sherfel, et al.,

      Plaintiffs,

      v.                       Case No. 2:09-cv-871

Roberta Gassman, et al.,

      Defendants.

MEMORANDUM OPINION AND ORDER

FINDINGS OF FACT AND CONCLUSIONS OF LAW

I. History of the Case

This is an action for declaratory and injunctive relief brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq., and the Declaratory Judgment Act, 28 U.S.C. §2201. The plaintiffs are Nationwide Mutual Insurance Company ("Nationwide"), the Benefits Administrative Committee ("the Committee"), and Joan Sherfel, a member of the Committee. Nationwide is a mutual corporation incorporated in the State of Ohio, with its principal place of business in Columbus, Ohio. Doc. 74, ¶ 4. Nationwide is the plan sponsor of the Nationwide Insurance Companies and Affiliates Plan for Your Time and Disability Income Benefits ("the Plan"). Doc. 74, ¶ 1. The Committee is the Plan Administrator of the Plan, and the Committee members reside and administer the Plan in the Southern District of Ohio. Doc. 74, ¶ 3.

The defendants are Roberta Gassman, Secretary of the State of Wisconsin Department of Workforce Development ("DWD"); LeAnna Ware, Administrator of the Equal Rights Division ("ERD") of the DWD; and John Byron Van Hollen, Attorney General of the State of Wisconsin.

The DWD is charged with receiving and investigating complaints under the Wisconsin Family and Medical Leave Act ("WFMLA"), Wis. Stat. §103.10, holding hearings on those complaints, rendering a decision on the complaint, and ordering remedies for violations, including providing requested family or medical leave, reinstating an employee, providing back pay and paying reasonable attorney fees to the complainant.  Wis. Stat. §103.10(12).  The DWD is also authorized to bring a civil action in a Wisconsin circuit court against an employer to recover damages caused by an employer's violation of Wis. Stat. §103.10(11), which prohibits interference with an employee's exercise of his or her rights under the WFMLA or retaliation for exercising those rights.  See Harvot v. Solo Cup Co., 320 Wis.2d 1, 15-16, 768 N.W.2d 176 (2009).

The ERD is the division of the DWD which administers the WFMLA and investigates complaints of violations of the WFMLA.  When probable cause for a violation is found, the ERD investigator refers the complaint to an Administrative Law Judge ("ALJ").  The ALJ conducts hearings and issues final and enforceable orders against employers who are found to be in violation of the WFMLA. Leave under the WFMLA is generally unpaid leave.  Wis. Stat. §103.10(5)(a) ("This section does not entitle an employee to receive wages or salary while taking family leave or medical leave.").  However, in the subsection commonly referred to as the "substitution provision," the WFMLA provides that "[a]n employee may substitute, for portions of family leave or medical leave, paid or unpaid leave of any other type provided by the employer."  Wis. Stat. §103.10(b).

Defendant Van Hollen is the head of the Wisconsin Department

of Justice. Wis. Stat. §15.25. The Wisconsin Department of Justice is authorized by statute to appear for and represent the state or any state agency, or to prosecute or defend any agency or official in any matter, civil or criminal, in any court. Wis. Stat. §165.25(1)(m).

In their first amended complaint filed on February 1, 2010, plaintiffs allege that Katharina Gerum, a Nationwide associate employed in Wisconsin, filed a complaint with the ERD against Nationwide on April 18, 2007, claiming that Nationwide violated the substitution provision of the WFMLA by denying her request to receive benefits under the Plan's Short-Term Disability Income Benefit Program ("STD Program") during intermittent time off from work to bond with her newborn child on the ground that she was not "disabled" within the meaning of the Plan. The ALJ assigned to the complaint ruled in favor of Gerum, and ordered Nationwide to pay Gerum benefits "under its STD Program," or, if that was not possible, from Nationwide's general assets. See Plaintiffs' Ex. 14.

In their amended complaint, plaintiffs allege that the Plan qualifies as an ERISA plan, and that the WFMLA substitution provision is pre-empted by ERISA insofar as an associate seeks under the WFMLA to substitute benefits provided under the Plan. Plaintiffs rely on the Supremacy Clause of the United States Constitution and ERISA's pre-emption provision, 29 U.S.C. §1144(a), which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. §1144(a). Plaintiffs allege that the WFMLA substitution provision conflicts with and is pre-

3

empted by ERISA because, as interpreted, it requires payment of STD income benefits to associates who are not disabled rather than deferring to Plan documents, interferes with the exclusive claims administration procedure established under ERISA, and prevents the Committee from determining eligibility for benefits pursuant to ERISA and the terms of the Plan.

In Count I of the first amended complaint, plaintiffs assert a claim for injunctive relief, alleging that the State of Wisconsin's application of the WFMLA substitution provision to the Plan has caused and will cause irreparable harm to plaintiffs by putting plaintiffs in the position of choosing between violating Wisconsin law and violating ERISA and the terms of the Plan by paying short-term disability ("STD") benefits to plan participants who do not qualify for those benefits. Plaintiffs request an order prohibiting defendants from processing, investigating and adjudicating claims for benefits that are governed exclusively by ERISA, and from initiating or participating in a state court action that attempts to apply or enforce the WFMLA substitution provision against plaintiffs with regard to STD benefits.

In Count II of the first amended complaint, plaintiffs seek a declaratory judgment that the Plan is an ERISA plan, that the substitution provision of the WFMLA is pre-empted to the extent that it is interpreted and applied to require the payment of disability income benefits to associates who are not entitled to benefits under the terms of the Plan and/or ERISA, that the Committee is not required to grant substitution requests for STD income benefits to associates who are not disabled, and that Nationwide is not required to pay substitution requests for STD

4

income benefits made by non-disabled associates out of general assets.

In Count III of the first amended complaint, the Committee, as Plan Administrator and a fiduciary under ERISA, requests instructions from the court as to whether it may continue to administer the Plan in accordance with Plan documents and ERISA without regard to the WFMLA.

By order dated September 27, 2010, this court denied defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6). At a telephone conference held on October 1, 2010, the court discussed consolidating the hearing on plaintiffs' motion for a preliminary injunction with the hearing on the merits of the case pursuant to Fed.R.Civ.P. 65(a)(2). The parties agreed to this procedure, and a final hearing on the merits was held on October 20, 2010. The parties have submitted post-trial briefs, and this matter is now before the court for a final decision on the merits.

II. Findings of Fact

The material facts underlying the instant case are not in dispute. On October 18, 2010, the parties filed a stipulation of facts. See Doc. 74. Evidence was also offered at the hearing on October 20, 2010, including documentary evidence and the testimony of Joanna McGoldrick, Nationwide Vice President of Benefits Planning; Joan Sherfel, Nationwide Associate Vice President of Human Resources; LeAnna Ware, Administrator of the State of Wisconsin Department of Work Force Development, Equal Rights Division; and Larry Jakubowski, Administrative Law Judge for the

Equal Rights Division.[1]

A. The Nationwide Plan

Nationwide conducts business in forty-nine states and has over thirty-two thousand employees. Hearing Tr., p. 15. Approximately two hundred of those employees reside in Wisconsin. Hearing Tr., p. 16. Through the Plan, Nationwide provides a standard set of benefits to all associates. Maintaining the same level of benefits aids in the administration of benefits and assists Nationwide in estimating funding needs. Hearing Tr., p. 17. As the sponsor of the Plan, Nationwide has filed tax and reporting documents with the federal government. Doc. 74, ¶ 11. The record includes a Form 5500 Annual Return/Report of Employee Benefit Plan for the year 2009 which Nationwide filed on behalf of the Plan. See Plaintiffs' Ex. 7.

The features of the Plan are outlined in the Plan documents contained in Plaintiffs' Ex. 1, as well as summary plan documents.

---

[1]Defendants assert that plaintiffs somehow waived their right to rely on the evidence presented at the hearing due to their failure to renew their motion for a preliminary injunction after the filing of the amended complaint, and that the post-trial briefing schedule was unfair because defendants were required to file the first post-trial brief. Plaintiffs were not required to discuss all of the allegations in their amended complaint in their motion for a preliminary injunction, and were entitled to present evidence at the hearing in support of their claims. The schedule for post-trial briefs was established in this court's order of October 4, 2010, following the telephone conference held on October 1, 2010. During that conference, defense counsel expressed concerns about being able to respond to the plaintiffs' motion before the evidentiary hearing, and agreed with the court's suggestion that the defendants combine their memorandum contra and any arguments concerning affirmative defenses in the first post-trial brief. Doc. 94, Ex. A, pp. 6-7. This court stated that "you can speak about the evidence the Court has heard [at the hearing] as well." Doc. 94, Ex. A, p. 7. Plaintiffs were given the opportunity to file a reply brief, and defendants were permitted to file a sur-reply on the issue of the affirmative defenses. Although defense counsel suggested after the hearing that plaintiffs "might want the opportunity to file an initial brief in light of the changed factual record," Hearing Tr., pp. 228-229, no objections were made as to the briefing schedule previously established by the court's order. The post-trial briefing schedule gave all parties an adequate opportunity to comment on the legal issues in the case and the evidence presented at the hearing.

Hearing Tr., p. 72.  The Nationwide Plan includes three benefits programs: 1) the Your Time Program; 2) the Short-Term Disability Income Benefit Program ("STD Program"); and 3) the Long-Term Disability Income Benefit Program ("LTD Program").  See Plaintiffs' Ex. 1; Doc. 74, ¶ 6.  The Summary Plan Description for the STD Program is included in the record as Plaintiffs' Ex. 2.

The Plan is a funded plan.  Under §12.03 of the Plan, Nationwide and its affiliates must make contributions to the Plan on behalf of active associates sufficient to cover all costs of the Plan in excess of the contributions made by associates.  Nationwide has funded the Plan through the establishment of the Nationwide Mutual Health Care Trust ("the Trust").  See Trust Agreement, Plaintiffs' Ex. 4; Doc. 74, ¶ 9.  The Trust Agreement states that the plan sponsor "hereby represents and warrants that the Plan is an employee welfare benefit plan, as that term is defined in Section 3(a) of ERISA."  Ex. 4, p. 3.  On behalf of the Trust, Nationwide filed a Form 990 Return of Organization Exempt from Income Tax for the year 2009.  See Plaintiffs' Ex. 8.  Nationwide, its affiliates, and the associates of Nationwide and its affiliates make contributions to the Trust for the payment of Plan benefits.  Doc. 74, ¶ 9.  The Trust Agreement also states,

> This Trust shall constitute the sole source of funds which may be used to pay benefits under the Plan, and the Participating Employers shall not be liable in any way or in any manner for any such benefits beyond those monies which have been contributed to this Trust.

Ex. 4, §9.15.  The sole purpose of the Trust is to hold the assets used to pay Plan benefits.  Doc. 74, ¶ 9.

The Committee's role is outlined in the Benefits Administrative Committee Charter.  See Plaintiffs' Ex. 5.  The

7

Committee is the named Plan Administrator and fiduciary of the Plan. Plaintiffs' Ex. 1, §9.01. The Committee has the legal right and obligation to direct the payment of benefits to associates from the Trust as dictated by the written terms of the Plan documents and ERISA's fiduciary standards. Only the Committee or a person with authority delegated from the Committee is authorized to direct payments out of Trust assets for STD, Your Time, and other funded benefits. Doc. 74, ¶ 10. Specifically, the Committee has the power to exercise discretion and to construe and interpret provisions of the Plan, determine the eligibility of associates to participate in the Plan, to decide all questions arising under the Plan, including the rights of participants under the Plan, and to determine the amount, manner, and time of the payment of benefits. Plaintiffs' Ex. 1, §9.04.

The Your Time Program provides accrued leave based on the number of hours worked by the associate in a pay period, the associate's length of service, and the associate's pay band. Plaintiffs' Ex. 1, §2.02.02. Leave accrued under the Your Time Program may be used for vacation, sick days, and personal days. The use of Your Time leave is subject to approval by the associate's supervisor, and associates do not have to contribute to this feature of the Plan.

The STD Program provides disability income benefits to participants who become "disabled" as that term is defined in the Plan, and who are unable to work. The record includes a Summary Plan Description for the STD Program. See Plaintiffs' Ex. 2. "STD Disabled" means "a disability or disablement that results from a substantial change in medical or physical condition due a specific

Illness that prevents an Eligible Associate from working their current position." Plaintiffs' Ex. 1, §1.57. "Pregnancy and complications of Pregnancy are covered for the Active Associate on the same basis as any other sickness." Plaintiffs' Ex. 1, §1.55. The STD Program is an income replacement or salary continuation benefit that is paid from the Trust, as opposed to associates' regular salaries, which are paid from Nationwide's general assets. The Plan language establishing the STD Program does not describe it as a leave program. See Plaintiffs' Ex. 1, §3.03.02 ("Short-Term Disability Income Benefits are not available for an Active Associate while on an approved Leave of Absence."); Hearing Tr.(McGoldrick testimony), p. 37 (Nationwide makes a distinction between leave of absence and income replacement benefits). Rather, the program is designed to ensure that Nationwide associates have some income replacement if they meet the requirements for being STD Disabled, and the Committee is not authorized to approve payment of STD benefits to someone who is not "STD Disabled." Hearing Tr., p. 28. Associates can learn about the benefits provided by the STD Program by looking at the Plan documents and the Summary Plan Description (Plaintiffs' Ex. 2), and by consulting the Plan's website and call center. Hearing Tr., p. 26. The Summary Plan Description provides information regarding benefits, eligibility, contributions, funding, applying for benefits, appeals, and ERISA rights. Hearing Tr., p. 27; Plaintiffs' Ex. 2.

Associates are eligible to receive basic STD income benefit coverage at no charge. Associates with up to fifty-nine months of service receive short-term disability ("STD") income benefit coverage of sixty percent of base salary, and associates with over

sixty months of service receive coverage of eighty percent of base salary.  See Plaintiffs' Ex. 2, §14.6.1.  Associates may elect to pay a premium which makes the associate eligible to receive an additional twenty percent of base salary.  Plaintiffs' Ex. 2, §14.6.2.  Employees may also use Your Time hours to increase the benefit amount to one hundred percent of base salary.  Plaintiffs' Ex. 2, §14.6.3.  The waiting period for receipt of STD benefits is five consecutive normally scheduled work days for which the associate is absent.  Plaintiffs' Ex. 2, §14.5.  An eligible associate may then receive STD benefits for between six and seven months.  Plaintiffs' Ex. 2, §14.9.  A claim for STD benefits is filed through the Disability Assessment Committee, which was established by charter.  See Plaintiffs' Ex. 6.  If a claim for benefits is denied, the associate can appeal that decision to the Committee.  Hearing Tr., p. 28.  The STD Program provisions do not address when or whether an associate may take a leave of absence from work due to disability.  Doc. 74, ¶ 8.

The LTD Program provides long-term disability ("LTD") benefits to an eligible employee who is "LTD Disabled," meaning that the associate has "a disability or disablement that results from a substantial change in medical or physical condition as a result of Injury or Sickness and that prevents an Active Associate from engaging in Substantial Gainful Employment for which [the associate] is, or may become, qualified."  Plaintiffs' Ex. 1, §1.34.  LTD benefits commence on the date benefits under the STD Program are exhausted.  Plaintiffs' Ex. 1, §4.03.02.01.  Associates who wish to be eligible for LTD benefits must enroll in the LTD Program and pay a part of the premium.

10

The various options for maternity leave are described in the Nationwide guidebook for expectant parents.  See Plaintiffs' Ex. 3. Maternity leave may begin up to two weeks prior to delivery.  Up to six weeks of leave are available for a normal delivery, and up to eight weeks are provided for a cesarean section.  Plaintiffs' Ex. 3, p. 7.  The first five days of leave are unpaid, unless the associate elects to use her available accrued Your Time benefits. After the first seven calendar days of absence, the associate can receive up to six weeks of STD benefits for a normal delivery, and up to eight weeks of STD benefits following a cesarean section. Plaintiffs' Ex. 3, p. 7.

Any additional leave requires the approval of the associate's manager.  During this period, the associate can use available Your Time benefits to take additional paid leave.  With a manager's approval, the associate can also take up to ten days of unpaid leave, or an unpaid leave of absence of eleven days to five months. Plaintiffs' Ex. 3, p. 9.  If the associate is STD Disabled, continued STD benefits may be available.  Plaintiffs' Ex. 3, p. 7. The guidebook further notes that although leave of up to twelve weeks may be available under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601, et seq., any additional time off to comply with the FMLA would not be paid time off unless covered by Your Time, the STD Program, or the LTD Program.  Plaintiffs' Ex. 3, p. 11.

B. The Gerum Claim

On March 21, 2007, the Committee decided an appeal regarding a claim for STD benefits made by Katharina Gerum, a Nationwide associate residing in Wisconsin.  Gerum asserted a claim for STD benefits to be paid while she took additional time off (beyond the

six weeks typically allowed) to bond with her baby, claiming that
the payment of such benefits was required under the WFMLA's
substitution provision.  The Committee denied the appeal.  The
Committee concluded that the STD Program was not "accrued paid
leave" within the meaning of the substitution provision, but rather
was a partial income replacement provided to a disabled person who
is not receiving paid leave.  Because Gerum was not STD Disabled,
that is, unable due to illness to work her current position, her
claim for STD benefits was denied.  See Plaintiffs' Ex. 11.  On
April 18, 2007, Gerum filed a complaint against Nationwide with the
ERD, alleging that Nationwide had violated the WFMLA.  Doc. 74, ¶
12; see also Defendants' Ex. S (ERD Administrative Record of the
Gerum Proceedings).  The Committee was not a party to this
proceeding.  Doc. 74, ¶ 18.

     The Wisconsin DWD administers the ERD, which is responsible
for enforcing the WFMLA.  Hearing Tr., p. 111.  After a complaint
is filed, an ERD officer is assigned to investigate the claim to
determine if there is probable cause to believe that a violation of
the WFMLA has occurred.  Hearing Tr., pp. 112-115.  If the
investigator determines that probable cause exists, then the case
is referred to an ALJ to conduct a hearing.  Hearing Tr., p. 120.
Because the investigators do not resolve legal issues, a case
presenting unsettled legal questions is likely to be referred to an
ALJ.  Hearing Tr., p. 126.

     At the time of the hearing before this court, there were nine
ALJs in the ERD.  Hearing Tr., p. 173.  After a case is referred
for a hearing, the assigned ALJ reviews the file and the briefs,
holds hearings, gathers evidence, and drafts decisions.  Hearing

Tr., p. 172.  The parties may conduct discovery and present witnesses at the hearing.  Hearing Tr., pp. 176, 193.  The substantive decisions of the ALJs are made independently and free of supervisory or political involvement.  Hearing Tr., pp. 145, 187.  The decisions of the ALJs are not precedential.  Hearing Tr., pp. 151, 201, 204.  In contrast, the decisions of the Wisconsin courts of appeals and the Wisconsin Supreme Court are considered to be binding precedent unless they can be distinguished.  Hearing Tr., pp. 168, 208-210.  If a claim against Nationwide is filed in the future, administrative law judges with the ERD would look to the decision of the Wisconsin Supreme Court in Aurora Medical Group v. Department of Workforce Development, Equal Rights Div., 236 Wis.2d 1, 612 N.W.2d 646 (Wis. 2000)(holding that the WFMLA substitution provision was not preempted by ERISA and that benefits from the employer's ERISA sick time plan could be substituted), to determine whether that decision was distinguishable on its facts. Hearing Tr., pp. 205-210.

On May 10, 2007, Mark Robarge, the ERD officer assigned to investigate Gerum's complaint, sent an e-mail to Jim Chiolino, then Chief of the Civil Rights Bureau of the ERD, requesting advice as to whether Gerum's claim fell within the substitution provision of the WFMLA.  Doc. 74, ¶ 13; Plaintiffs' Ex. 12.  Chiolino responded on May 11, 2007, and noted that in the case of Northwestern Mutual Life Ins. Co. v. Dept. of Industry, Labor and Human Relations, Equal Rights Div., No. 94-CV-001022 (Wis. Cir. Ct., Jan. 16, 1995), a Wisconsin circuit court had held that disability plan benefits are to be substituted.  Doc. 74, ¶ 14; Plaintiffs' Ex. 12.  On May 21, 2007, Robarge determined that there was probable cause to

believe that Nationwide had violated the WFMLA.  Robarge noted Nationwide's arguments that Gerum's claim was pre-empted by ERISA and that the leave sought by Gerum was not available for substitution under the WFMLA, but concluded that these arguments presented issues of law best addressed during the hearing process by an ALJ.  Doc. 74, ¶ 15; Plaintiffs' Ex. 13.

On June 20, 2007, Nationwide filed a notice of removal in the United States District court for the Western District of Wisconsin, attempting to secure the removal of Gerum's claim to that court based on ERISA pre-emption.  See Defendants' Ex. K.  The district court granted Gerum's motion to remand, concluding that the issue of whether Nationwide's STD benefits constituted "accrued leave" subject to substitution under the WFMLA was a question of state law, and that Nationwide's assertion of ERISA pre-emption as a defense did not provide a basis for removal of the administrative proceedings to federal court.  See Defendants' Ex. O, Gerum v. Nationwide Mutual Ins. Co., Case No. 07-C-340-S (W.D.Wis. Aug. 13, 2007).

On August 14, 2008, ALJ Gary L. Olstad issued a decision in the Gerum matter, styled as Katharina A. Gerum vs. Nationwide Insurance, ERD # CR200701451.  See Plaintiffs' Ex. 14.  ALJ Olstad concluded that "Nationwide, through its STD plan administrators," violated the WFMLA when it denied Gerum's request to substitute paid STD leave for leave under the WFMLA.  Plaintiffs' Ex. 14, p. 2.  The ALJ ordered Nationwide to allow Gerum "to substitute paid leave under its STD plan" for leave under the WFMLA by compensating her in the amount she would have been compensated had the substitution been approved when requested.  Plaintiffs' Ex. 14, p.

14

2.  The ALJ further ordered Nationwide to "restore to Gerum's Your Time benefits account the eight days she used to cover the denial of her substitution request." Plaintiffs' Ex. 14, p. 2.  The ALJ rejected Nationwide's argument regarding ERISA pre-emption, noting that Gerum never requested STD benefits because she thought she was entitled to them, but because the WFMLA said she could do so. Plaintiffs' Ex. 14, p. 3.  The ALJ concluded that Nationwide's STD benefit plan "is a type of leave offered to its employees" and therefore subject to substitution.  Plaintiffs' Ex. 14, p. 3.  The ALJ also rejected Nationwide's argument that it had no control over the payment of STD benefits, noting,

> It may be true that Nationwide itself has no input in the approval or denial of benefits in any given case; to argue it has no control is ludicrous.  Nationwide could, at any time, discontinue offering employee benefits such as its STD plan.  More control does not exist.

Plaintiffs' Ex. 14, p. 3.  The ALJ further noted that Nationwide's argument that it lacked authority to order payment of STD benefits also failed because Nationwide was required to permit the substitution of STD leave for leave under the WFMLA, and that "[i]f there is no provision in the plan to make payments required by law, Nationwide must pay.  Which pocket the money comes from is of no moment."  Plaintiffs' Ex. 14, p. 4.

Prior to the <u>Gerum</u> decision, ALJ Olstad had issued another order in <u>Richtig v. Florence Villa Nursing & Rehab</u>, ERD Case No. CR200101393 (Jan. 30, 2002).  The Florence Villa employee filed a complaint contending that she was entitled to STD benefits while on four weeks of WFMLA leave due to foot surgery.  ALJ Olstad concluded that the employer violated the WFMLA by refusing to permit the complainant to collect STD benefits under the employer's

STD plan.  <u>See</u> Plaintiffs' Ex. 16, p. 2.

The ALJ's order was presented to the Committee.  However, the Committee rejected the request for payment because the request for benefits was not within the terms of the Plan.  The order created a conflict for the Committee as to whether to follow Wisconsin law or federal law.  To resolve the issue, Nationwide settled with Gerum.  Hearing Tr. p. 81.  If STD benefits are available for substitution in Wisconsin, Nationwide might have to charge Wisconsin employees more for the coverage and Wisconsin employees would receive a benefit which Nationwide employees in other states are not entitled to, both which would go against Nationwide's equity philosophy of providing a standard set of benefits.  Hearing Tr., pp. 63-64.

Following the <u>Gerum</u> matter, an e-mail inquiry was received by the Nationwide Associate Service Center on November 2, 2009, from an associate in Wisconsin requesting to substitute STD benefits for six additional weeks to bond with her baby.  The associate was informed that current Nationwide policy did not permit substitution of STD benefits for baby bonding time.  Plaintiffs' Ex. 15; Hearing Tr., p. 41.  If a Nationwide associate filed a claim with the ERD in the future, alleging a denial of the opportunity to substitute short-term or long-term disability benefits or disability retirement benefits, the ERD would exercise jurisdiction over the claim.  Hearing Tr., p. 94.

<u>III. Conclusions of Law</u>

<u>A. Existence of an ERISA Plan</u>

The threshold issue to be determined is whether the Nationwide Plan qualifies as an ERISA plan.  <u>See</u> <u>Daft v. Advest, Inc.</u>, 658

16

F.3d 583, 590-591 (6th Cir. 2011)(the existence of an ERISA plan is an element of the plaintiff's claim).  "Determining the existence of an ERISA plan is a question of fact to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person[.]"  Kolkowski v. Goodrich Corp., 448 F.3d 843, 847 (6th Cir. 2006).  The mere labeling of a particular benefit as an ERISA plan is not determinative.  Langley v. DaimlerChrysler Corp., 502 F.3d 475, 481 (6th Cir. 2007).  In determining whether ERISA covers a particular plan, courts consider the following factors: (1) does a "safe harbor" exception[2] apply; (2) if not, do the surrounding circumstances suggest that a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and the procedures for receiving benefits; and (3) has the employer established or maintained the plan with the intent of providing benefits to its employees.  Id. at 479.

The terms "employee welfare benefit plan" and "welfare plan" are defined as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on

---

[2]"Safe harbor" exceptions are found in statutes or regulations which exclude employer practices from the definition of "employee welfare benefit plan," such as the "payroll practices exclusion found in 29 C.F.R. §2510.3-1.

retirement or death, and insurance to provide such pensions.

29 U.S.C. §1002(1). The benefits described in "section 186(c) of this title" include "pooled vacation, holiday, severance or similar benefits." 29 U.S.C. §186(c)(6). The Plan provides vacation benefits and benefits in the event of sickness and disability, those being the types of benefits which fall within the definition of "employee welfare benefit plan."

No "safe harbor" has been identified in this case. The Plan is funded through the Trust, which was specially created to fund the Plan, not Nationwide's general assets. The creation of a separate fund to pay employee benefits subjects an employer to the regulatory provisions of ERISA. Massachusetts v. Morash, 490 U.S. 107, 114 (1989). The Plan does not provide "normal compensation" as a result of disability from "the employer's general assets," and therefore is not a mere "payroll practice" under 29 C.F.R. §2510.3-1(b)(2) which would not be regulated by ERISA. See Abella v. W.A. Foote Mem'l Hosp., 740 F.2d 4, 5 (6th Cir. 1984).

A reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and the procedures for receiving benefits by examining the Plan documents, the Summary Plan Description, and the Trust documents. The evidence, including the Plan documents and the hearing testimony, also establishes that Nationwide has established and maintained the Plan with the intent of providing benefits to its employees. Such a purpose is also corroborated by the filing with the Internal Revenue Service of the annual returns/reports which are required of employee benefit plans.

The Plan has been held to qualify as an ERISA plan in other

18

cases.  See Plaintiffs' Ex. 9 (Order in McGoldrick v. Bradstreet, Case No. 2:08-cv-01 (S.D.Ohio Sept. 26, 2008) approving consent decree which specified that the Nationwide Plan is an ERISA plan); Plaintiffs' Ex. 10 (Order Adopting Report and Recommendation in Nationwide Mut. Ins. Co. v. Copadis, No. 07-cv-241-PB (D.N.H. September 12, 2007) finding that the Nationwide Plan is an ERISA plan).  The court finds and concludes that the Plan qualifies as an "employee welfare benefit plan" governed by ERISA.

B. Eleventh Amendment Defense

Defendants argue that the instant action must be dismissed on the ground of Eleventh Amendment immunity.  This argument was previously raised by defendants in their motion to dismiss, and was rejected in this court's order of September 27, 2010, Doc. 60, pp. 20-23.  For the reasons stated in that order, this court remains convinced that the Eleventh Amendment does not pose a bar to plaintiffs' claims.

Under Ex parte Young, 209 U.S. 123 (1908), a suit that claims that a state official's actions violate federal law is not deemed a suit against the state barred under the Eleventh Amendment so long as the state official is the named defendant and the relief sought is only equitable and prospective.  Westside Mothers v. Haveman, 289 F.3d 852, 860 (6th Cir. 2002); see also Carten v. Kent State University, 282 F.3d 391, 395 (6th Cir. 2002)(action seeking prospective relief to end a continuing violation of federal law falls within the Ex parte Young exception to the Eleventh Amendment bar).  In Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983), plaintiffs sought declaratory relief holding that certain New York laws were pre-empted by ERISA.  The Supreme Court, citing Ex parte

19

<u>Young</u>, 209 U.S. at 160-162, stated, "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." <u>Id.</u> at 96 n. 14.

As noted in this court's order of September 27, 2010, Doc. 60, plaintiffs adequately pleaded a threatened, ongoing violation of ERISA pre-emption law in their first amended complaint. <u>See also</u> Doc. 60, pp. 9-20 (discussing the sufficiency of plaintiffs' allegations to establish standing, and concluding that plaintiffs had alleged an "injury in fact" that was concrete and particularized, actual or imminent, fairly traceable to the challenged action of the defendants, and likely to be redressed by a favorable decision). Defendants' argument that plaintiffs have failed to prove their allegations of threatened, ongoing harm goes to the merits of plaintiffs' claims. However, the focus of the Eleventh Amendment inquiry under <u>Ex parte Young</u> "remains on the allegations only; it 'does not include an analysis of the merits of the claim.'" <u>League of Women Voters of Ohio v. Brunner</u>, 548 F.3d 463, 474 (6th Cir. 2008)(quoting <u>Verizon Maryland, Inc. V. Public Service Com'n of Maryland</u>, 535 U.S. 635, 646 (2002)). The Sixth Circuit in <u>Brunner</u> noted that defendants' reliance on excerpts from deposition testimony to attempt to show that none of the plaintiffs had a reasonable basis to believe the violations would occur in the future was "contrary to <u>Verizon</u>, which limits the inquiry to the complaint." <u>Id.</u> at 475; <u>see also</u> <u>Dubuc v. Michigan Board of Law Examiners</u>, 342 F.3d 610, 616 (6th Cir. 2003).

The instant case is not a mere appeal of the <u>Gerum</u> matter, which has been settled. Rather, this is an action brought by Plan fiduciaries pursuant to the enforcement provisions of ERISA:

> (a) A civil action may be brought- ... (3) by a
> participant, beneficiary, or fiduciary (A) to enjoin any
> act or practice which violates any provision of this
> subchapter or the terms of the plan, or (B) to obtain
> other appropriate equitable relief (I) to redress such
> violations or (ii) to enforce any provisions of this
> subchapter or the terms of the plan[.]

29 U.S.C. §1132(a)(3).  Section 1132(a)(3) grants to ERISA
fiduciaries a cause of action for injunctive and declaratory relief
to enjoin an act or practice which violates ERISA pre-emption
principles.  <u>Thiokol Corp. v. Department of Treasury, State of
Michigan, Revenue Div.</u>, 987 F.2d 376, 380 (6th Cir. 1993); <u>see also</u>
<u>Denny's, Inc. v. Cake</u>, 364 F.3d 521, 524-528 (4th Cir. 2004)(ERISA
fiduciary may bring an action for declaratory and injunctive relief
under §1132(a)(3) to enforce 29 U.S.C. §1144, ERISA's pre-emption
provision).

Plaintiffs' claims for declaratory and injunctive relief under
§1132(a)(3), alleging that the continued threat of enforcement of
the WFMLA substitution provision against the Plan violates the
Supremacy Clause and the federal law of ERISA pre-emption, are not
barred by the Eleventh Amendment.  <u>See</u> <u>Thiokol</u>, 987 F.2d at 382
(claims based on ERISA pre-emption asserted against state officials
in their official capacities for prospective declaratory and
injunctive relief are not barred by the Eleventh Amendment); <u>see
also</u> <u>Commonwealth Edison Co. v. Vega</u>, 174 F.3d 870, 871-72 (7th
Cir. 1999)(action against Illinois official in her official
capacity seeking injunctive and declaratory relief on the basis
that Illinois statute was pre-empted by ERISA and was therefore
unenforceable under the Supremacy Clause of the Constitution was
not barred by the Eleventh Amendment); <u>CIGNA Healthplan of
Louisiana, Inc. V. State of Louisiana ex rel. Ieyoub</u>, 82 F.3d 642,

644 n. 1 (5th Cir. 1996)(action against state official seeking injunctive relief and declaratory judgment that state law was pre-empted by ERISA was not barred by the Eleventh Amendment).[3]

C. ERISA Pre-emption

1. Plaintiffs' Claims

Plaintiffs claim that the substitution provision of the WFMLA is pre-empted by ERISA insofar as that provision is applied to permit associates to substitute STD benefits offered by the Plan for unpaid WFMLA leave. They seek injunctive relief prohibiting the application of the substitution provision against the Plan, as well as declaratory relief that the substitution provision is pre-empted by ERISA. "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. §1331 to resolve." Shaw, 463 U.S. at 96 n. 14; see also Associated Builders and Contractors, Saginaw Valley Area Chapter v. Perry, 115 F.3d 386, 389 (6th Cir. 1997)(holding in a case involving an ERISA pre-emption issue that the court had "jurisdiction over suits to enjoin state officials from interfering with federal rights").

An action such as this one seeking declaratory and injunctive

_____

[3] "The availability of prospective relief of the sort awarded in Ex parte Young gives life to the Supremacy Clause." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 293 (1997). The relief afforded by Ex parte Young is most important in cases where (1) no state forum is available to vindicate the federal claim, or (2) the federal interest in interpreting or vindicating federal law outweighs the state's sovereignty interests. Id. at 271-277. Plaintiffs could not have filed this action in a Wisconsin state court. Under 29 U.S.C. §1132(e)(1), ERISA's exclusive federal jurisdiction provision, state courts lack jurisdiction over ERISA pre-emption actions filed by fiduciaries under §1132(a)(3). Thiokol, 987 F.2d at 380.

relief on the grounds of ERISA pre-emption may be brought by Plan fiduciaries pursuant to 29 U.S.C. §1132(a)(3).  See Denny's, 364 F.3d at 525-28 (§1132(a)(3)(B) permits an ERISA fiduciary to bring an action seeking injunctive and declaratory relief to enforce §1144, ERISA's pre-emption provision); Thiokol, 987 F.2d at 379-80 (fiduciary may bring claims for declaratory and injunctive relief pursuant to §1132(a)(3) arguing ERISA pre-emption).

The Committee also seeks instructions on whether it must comply with the WFMLA or with the terms of the Plan.  A fiduciary of a plan covered by ERISA may bring a declaratory judgment action in federal court to determine whether the plan's trustees may comply with state law.  Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust, 463 U.S. 1, 26 (1983); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112 (1989)("A trustee who is in doubt as to the interpretation of the instrument can protect himself by obtaining instructions from the court.").

2. Purpose of ERISA Pre-emption

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004).  ERISA represents a balance between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.  Id. at 215.  In enacting ERISA, Congress sought to offer employees enhanced protection for their benefits, while avoiding the creation of a system that is so complex that administrative costs or litigation expenses would unduly discourage employers from offering welfare benefit plans in the first place.  Varity Corp. v. Howe, 516 U.S.

489, 497 (1996).  Thus, ERISA "induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 379 (2002); see also Conkright v. Frommert, ____ U.S. ____, 130 S.Ct. 1640, 1649 (2010).

The purpose of ERISA pre-emption is to avoid conflicting federal and state regulation to create a nationally uniform administration of employee benefit plans.  Helfman v. GE Group Life Assurance Co., 573 F.3d 383, 390 (6th Cir. 2009)(noting that state regulation of plans creates the potential for fifty or more conflicting governance structures, while uniform governance under federal law avoids these conflicts).

> One of the principal goals of ERISA is to enable employers "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." [Fort Halifax Packing Co, Inc. v. Coyne, 482 U.S. 1, 9 (1987)] Uniformity is impossible, however, if plans are subject to different legal obligations in different States.... Plan administrators cannot make payments simply by identifying the beneficiary specified by the plan documents.  Instead they must familiarize themselves with state statutes so that they can determine whether the named beneficiary's status has been "revoked" by operation of law.  And in this context the burden is exacerbated by the choice-of-law problems that may confront an administrator when the employer is located in one State, the plan participant lives in another, and the participant's former spouse lives in a third.  In such a situation, administrators might find that plan payments are subject to conflicting legal obligations.

Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 148-49 (2001)(footnote omitted); see also Ingorsoll-Rand Co. v. McClendon, 498 U.S. 133 (1990)(states' development of different substantive

standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction would be "fundamentally at odds with the goal of uniformity that Congress sought to implement").

The question whether a state law is pre-empted by federal law is one of congressional intent, and the purpose of Congress is the ultimate touchstone. <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 45 (1987). Pre-emption occurs where a state law interferes with or is contrary to federal law, in which case, the federal law nullifies the state law. <u>American Council of Life Insurers v. Ross</u>, 558 F.3d 600, 604 (6th Cir. 2009).

<u>3. History of ERISA Pre-emption</u>

<u>a. Express Pre-emption</u>

The Supreme Court has analyzed ERISA pre-emption both in terms of express pre-emption and implied conflict pre-emption. ERISA contains a provision which expressly pre-empts state laws:

> Except as provided in subparagraph (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. §1144(a).[4] The term "State law" includes "all laws, decisions, rules, regulations or other State action having the effect of law, of any State." 29 U.S.C. §1144(c)(1).

The ERISA express pre-emption provision is "clearly expansive." <u>California Div. of Labor Standards Enforcement v.</u>

---

[4]29 U.S.C. §1144(b) includes specific exceptions to the pre-emptive reach of §1144(a) which are not involved in this case. Likewise, this court has found that the Plan is an ERISA plan as defined in 29 U.S.C. §1003(a); it is not one of the types of plans described in 29 U.S.C. §1003(b).

_Dillingham Construction, N.A., Inc._, 519 U.S. 316, 328 (1997); _New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co._, 514 U.S. 645, 655 (1995).  In _Shaw_, the Supreme Court noted that "Congress used the words 'relate to' in [§1144(a)] in their broad sense."  463 U.S. at 98.  The Supreme Court has held that a state law "relate[s] to" an employee benefit plan "'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'"  _Metropolitan Life Ins. Co. v. Massachusetts_, 471 U.S. 724, 739 (1985)(quoting _Shaw_, 463 U.S. at 98).  Section 1144(a) is not limited to state laws specifically designed to affect employee benefit plans; pre-emption may occur even where the effect of the state law is only indirect.  _Pilot Life_, 481 U.S. at 47-48.

However, in later cases, the Court narrowed the application of §1144(a), noting that the term "relate to" cannot be taken "to extend to the furthest stretch of its indeterminacy," or else "for all practical purposes pre-emption would never run its course." _Travelers_, 514 U.S. at 655.  The Court has also recognized that some state laws may relate to employee benefit plans in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."  _Shaw_, 463 U.S. at 100 n. 21.

The Supreme Court has held that a state law which imposed requirements by "reference to" ERISA-covered programs was pre-empted where the existence of an ERISA plan was essential to the law's operation.  _See District of Columbia v. Greater Washington Bd. of Trade_, 506 U.S. 125, 130-131 (1992).  In that case, a District of Columbia law provided:

> Any employer who provides health insurance coverage for
> an employee shall provide health insurance coverage

26

> equivalent to the existing health insurance coverage of
> the employee while the employee receives or is eligible
> to receive workers' compensation benefits under this
> chapter.

D.C. Code Ann. §36.307(a-1)(1)(Supp. 1992).  Despite the fact that
the above provision does not mention the term "ERISA," the Supreme
Court found that the law specifically "referred to" welfare benefit
plans which were regulated by ERISA, noting that the employees'
existing health insurance coverage was a welfare benefit plan.
Greater Washington, 506 U.S. at 130-31.

    However, in a later case, the Supreme Court held that a state
law which functioned irrespective of the existence of an ERISA plan
"does not make reference to ERISA plans." Dillingham Construction,
519 U.S. at 328.  In Dillingham Construction, the court held that
a state law which permitted a lower apprentice wage only to a
contractor who acquired apprentices through an apprenticeship
program sponsored by both labor and management, regardless of
whether that program was funded through an ERISA plan, did not "make
reference to ERISA plans" because the law treated both ERISA and
non-ERISA plans funded out of an employer's general assets alike.

    In De Buono v. NYSA-ILA Medical and Clinical Services Fund, 520
U.S. 806, 814-816 (1997), the Court found that a state tax levied
upon health care facilities operated by an ERISA plan was not pre-
empted, noting that the law did not require an employer to provide
certain benefits, and that the existence of a plan was not a
critical element of the state-law cause of action.  See also
Travelers, 514 U.S. at  649 (state law that required hospitals to
collect surcharges from patients covered by commercial insurer did
not "relate to" employee benefit plans); Associated Builders &

27

Contractors v. Michigan Dept. of Labor and Economic Growth, 543 F.3d 275, 280 (6th Cir. 2008)(state rules which did not act immediately and exclusively upon ERISA plans and which did not depend on the existence of ERISA plans for their operation did not "make reference to" ERISA plans).

The Supreme Court has also discussed the "connection to" branch of express pre-emption.  "A law that does not refer to ERISA plans may yet be pre-empted if it has a 'connection with' ERISA plans." Dillingham Construction, 519 U.S. at 325.  To determine whether state law has a forbidden connection, this court must look to the objectives of the ERISA statue as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.  Id.  The Supreme Court has held that state statutes that mandated employee benefit structures or their administration amounted to connections with ERISA plans.  See Travelers, 514 U.S. at 658 (citing FMC Corp. v. Holliday, 498 U.S. 52 (1990) and Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504 (1981)).  However, in Dillingham, the Court held that a state law which required that apprentices on public-works projects be paid the local prevailing wage unless the state had approved the apprenticeship program, in which case the contractor could pay the lower rate, was not pre-empted because it merely offered economic incentives for compliance, and the contractor could avoid the application of the statute by not working on public-works projects.  Dillingham, 519 U.S. at 328-332.  "The key distinction is between a statute that mandates or effectively mandates an aspect of law with which ERISA is concerned–i.e., a statute that mandates 'employee benefit structures or their administration'–and a statute

that does not." <u>Associated Builders</u>, 543 F.3d at 280.  To pre-empt state law based on a "connection with" an ERISA plan, "(1) the law at issue must mandate (or effectively mandate) something, and (2) that mandate must fall within the area that Congress intended ERISA to control exclusively.  <u>Id.</u> at 281.

For example, in <u>Egelhoff</u>, 532 U.S. at 147, the Supreme Court held that a state law which provided for automatic revocation, upon divorce, of any designation of a spouse as beneficiary of a nonprobate asset, had an impermissible connection with ERISA plans because it bound plan administrators to a particular choice of rules for determining beneficiary status, and was pre-empted.  The Court noted that "administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents.  The statute thus implicates an area of core ERISA concern."  <u>Id.</u>  Specifically, ERISA provides that the plan shall "specify the basis on which payments are made to and from the plan" and requires plan fiduciaries to administer the plan "in accordance with the documents and instruments governing the plan" to a beneficiary who is "designated by a participant, or by the terms of [the] plan."  29 U.S.C. §§1002(8), 1102(b)(4), and 1104(a)(1)(D).  The Court in <u>Egelhoff</u> observed that, unlike generally applicable laws regulating "areas where ERISA has nothing to say, ... this statute governs the payment of benefits, a central matter of plan administration."  532 U.S. at 148.  The Court in <u>Egelhoff</u> also concluded that the state law had a prohibited connection with ERISA plans because it interfered with nationally uniform plan administration.  <u>Id.</u> at 148.

<u>b. Conflict Pre-emption</u>

ERISA pre-emption can also take the form of implied or conflict pre-emption, which occurs where a state law operates within the scope of 29 U.S.C. §1132(a), ERISA's civil enforcement provisions. Ross, 558 F.3d at 607.  In particular, §1132(a)(1)(B) authorized a plan participant or beneficiary to bring a civil action to recover benefits due under the terms of the plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan.  These provisions are the "sort of overpowering federal policy that overrides a statutory provision designed to save state law from being preempted." Rush Prudential, 536 U.S. at 375.  Conflict pre-emption is required where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  Boggs v. Boggs, 520 U.S. 833, 844 (1997).

ERISA's legislative scheme includes an integrated system of procedures for enforcement which is essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans.  Davila, 542 U.S. at 208.  The provisions of § 1132(a)

> set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.  The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

Pilot Life, 481 U.S. at 54.  "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil

30

enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Davila, 542 U.S. at 209.

The manner in which the state cause of action is labeled is not determinative.  Id. at 214; see also Ingorsoll-Rand, 498 U.S. at 142-45 (state tort of wrongful discharge based on employer's motivation to avoid paying pension benefits conflicted with ERISA enforcement); Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991)(label does not determine whether claim is pre-empted, but rather whether claim is in essence for recovery of an ERISA plan benefit).  Likewise, the fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA is not sufficient to put the state law cause of action outside the scope of the ERISA civil enforcement mechanism.  Id. at 214-215. "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA [§1132(a)] remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim." Id. at 216.  The Supreme Court in Davila noted:

> If follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA [§1132(a)(1)(B)]. [Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987)].  In other words, if an individual, at some point in time, could have brought his claim under ERISA [§1132(a)(1)(B)], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual' cause of action is completely pre-empted by ERISA [§1132(a)(1)(B)].

31

Id. at 210.

In Davila, the respondents asserted a claim for denial of coverage under an ERISA employee benefit plan under a Texas law which imposed a duty on managed care entities to "exercise ordinary care when making health care treatment decisions[.]" Respondents could have brought an action under §1132(a)(1)(B) to contest the denial of coverage and seek reimbursement for medical treatment expenses. Id. at 212. The Court noted that if the managed care entity correctly concluded under the terms of the plan that respondents were not entitled to coverage, then the failure of the plan itself to provide coverage would be the proximate cause of any damages. Id. at 213. The Court concluded that because the interpretation of the terms of respondents' benefit plans formed an essential part of their state law claim, and because that claim existed only due to the administration of ERISA-regulated benefit plans, the state law cause of action was not entirely independent of the federally regulated ERISA plan and fell within the scope of §1132(a)(1)(B) so as to be completely pre-empted. Id. at 213-214.

In Briscoe v. Fine, 444 F.3d 478, 498 (6th Cir. 2006), the Sixth Circuit held that ERISA pre-empted state-law claims of fraud, misrepresentation and concealment based on a nonfiduciary defendant's alleged failure to disclose a healthcare plan's financial condition. The court noted that any duty to disclose the plan's financial condition "arose not out of an independent source of law, but out of the existence and nature of the plan itself." Id. at 499. The court concluded that the state-law claims served as an "alternative enforcement mechanism" and were therefore pre-empted by ERISA. Id. at 500.

32

In <u>McLemore v. Regions Bank</u>, 682 F.3d 414 (6th Cir. 2012), the Sixth Circuit considered whether the state-law claims brought by a bankruptcy trustee and former clients of an investment advisor against the bank where the advisor had maintained fiduciary accounts of defrauded employee benefit plans were pre-empted by ERISA.  The court concluded that the claims depended on the existence of the plans, and because the claims arose not from an independent legal duty, but rather from the ERISA violations committed by the advisor, they sought an alternative enforcement mechanism for the legal duties imposed under ERISA.  682 F.3d at 425-26.

### 4. Pre-emption Analysis of the WFMLA

The above cases indicate that over the years, the Supreme Court has become increasingly frustrated in trying to apply the definition of the statutory term "relate to" applicable to an express pre-emption analysis.  <u>See</u>, <u>e.g.</u>, <u>Travelers</u>, 514 U.S. at 655 (noting "we have to recognize that our prior attempt to construe the phrase 'relate to' does not give us much help drawing the line here").  In the instant case, the application of the "connection with" part of the test is fairly straightforward, because the WFMLA: (1) mandates or effectively mandates the substitution and payment of STD benefits (2) which are provided pursuant to an ERISA plan, the payment of plan benefits being within the area that Congress intended ERISA to control exclusively.  <u>Associated Builders</u>, 543 F.3d at 281.  The WFMLA substitution provision also has a prohibited connection with ERISA plans because it interferes with nationally uniform plan administration.  <u>Egelhoff</u>, 532 U.S. at 148.  The "refers to" branch of the analysis is less clear.  When viewed in the context of Supreme Court precedent, the WFMLA substitution provision is most

33

closely analogous to the state laws addressed in <u>Shaw</u> and <u>Greater Washington</u> which required an employer to furnish certain types of benefits, and which were held to "relate to" or "refer to" ERISA plans so as to be pre-empted under §1144(a).  However, since the WFMLA substitution provision applies both to ERISA and non-ERISA benefit plans, language in <u>Dillingham</u> might be read as indicating that the provision does not "refer to" ERISA plans.

In determining whether express pre-emption exists, the Supreme Court has focused increasingly on "the objectives of the ERISA statue as a guide to the scope of the state law that Congress understood would survive."  <u>Travelers</u>, 514 U.S. at 656. Congressional intent is also the main focus of a conflict pre-emption analysis.  <u>See</u> <u>Davila</u>, 542 U.S. at 209 (noting that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted").

After consideration of the Supreme Court's cases discussing ERISA pre-emption, the Sixth Circuit has identified three classes of state laws or claims which are subject to ERISA pre-emption. Those are claims based on state laws that: (1) mandate employee benefit structures or their administration; (2) provide alternative enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself. <u>McLemore</u>, 682 F.3d at 425 (citing <u>Briscoe</u>, 444 F.3d at 497).

Turning to the first category, the WFMLA substitution provision, as applied to ERISA plans such as the Nationwide Plan,

34

effectively mandates employee benefit structures and their administration.  The WFMLA substitution provision was applied by the ALJ in <u>Gerum</u> to require Nationwide to pay what were clearly identified as ERISA plan benefits out of its general assets, despite the fact that the Trust Agreement, a Plan document, limits Nationwide's liability for such benefits to monies which have been contributed to the Trust.  Ex. 4, §9.15.  If Nationwide wishes to avoid having to pay substitution claims out of its general assets, it will have to amend the terms of its ERISA plan to create a new class of benefits which would satisfy WFMLA substitution claims, or create a separate ERISA plan for Wisconsin substitution claims. Thus, the WFMLA, as applied, effectively mandates ERISA benefit structures.

The substitution provision was also utilized in <u>Gerum</u> as authority to order Nationwide, the Plan sponsor, to pay STD benefits to a Plan participant who was not "STD disabled" and who otherwise would not have been entitled to those benefits under the terms of the Plan, <u>see</u> Plaintiffs' Ex. 14, p. 2.  The WFMLA effectively mandates the Plan's administration by taking away the Committee's sole authority to construe and interpret provisions of the Plan, to decide all questions arising under the Plan, including the rights of participants under the Plan, and to determine the amount, manner, and time of the payment of benefits, as provided in §9.04 of the Plan, giving the ALJ in the ERD's administrative procedures the authority to decide whether the employee is entitled to those Plan-defined STD benefits through WFMLA substitution.[5]  The WFMLA

---

[5]In the <u>Gerum</u> case, the ALJ noted that whether the Committee correctly decided that Gerum was not entitled to STD benefits was irrelevant.  He wrote that Gerum "never asked to substitute leave because she thought she was entitled

substitution provision, which requires administrators to pay benefits to beneficiaries chosen by state law rather than to beneficiaries identified in the plan documents, "implicates an area of core ERISA concern" and is pre-empted. See Egelhoff, 532 U.S. at 147.

In regard to the second class of pre-emption cases, the WFMLA substitution provision provides an alternative enforcement mechanism for obtaining plan benefits, thus satisfying the criteria for conflict pre-emption. In the instant case, the Plan provided procedures for applying for STD benefits. In fact, Gerum utilized those procedures, and her claim for benefits was denied. See Plaintiffs' Ex. 11. She could have brought an action under §1132(a)(1)(B) to contest the denial of STD benefits. See Davila, 542 U.S. at 212. Instead, she pursued those benefits by invoking the state enforcement mechanisms available under the WFMLA.

The WFMLA permits employees to file a complaint with the ERD alleging a violation of the substitution provision. If probable cause is found, the complaint is referred to an ALJ for a decision. In this capacity, the ALJ is free to construe the terms of an employee benefit plan and determine whether the employee is entitled to substitute plan-defined benefits for unpaid leave, tasks normally reserved under ERISA to plan administrators. As the Gerum case illustrates, the ALJ can order an employer to pay benefits which are offered under the plan, regardless of whether the employee meets the plan requirements for receipt of those benefits. Where the administrator is bound by the plan to apply certain standards to an

---

to STD benefits" but because the WFMLA "said she could. Indeed, it is the employee's call; not the employer[']s."

award of STD benefits, but a Wisconsin ALJ determines that STD benefits must be paid under §103.10(b) to an employee who is not eligible for such benefits under the plan, then it is impossible for the administrator to comply with both ERISA and the WFMLA, and an impermissible conflict results.

As indicted above, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Davila, 542 U.S. at 209. The WFMLA itself does not independently require an employer to pay an employee while the employee is on WFMLA leave. The WFMLA substitution provision only operates when an employer offers some form of paid or unpaid leave, such as paid vacation leave or sick leave, which can be substituted for the unpaid WFMLA leave. When an employer offers a form of paid leave or, as in this case, STD benefits, only through an ERISA plan which an employee seeks to substitute for unpaid WFMLA leave, the WFMLA substitution claim exists only due to the fact that this ERISA benefit is offered; in such a case, there can be no substitution under §103.10(b) but for the existence of the ERISA plan which provides the benefit. The employee's claim under the WFMLA substitution provision is in effect a claim to recover plan benefits.

In determining whether plan benefits may be substituted under §103.10(b), the ALJ looks to the ERISA plan to determine if it furnishes "paid or unpaid leave of any other type provided by the employer" so as to qualify for substitution. See Plaintiffs' Ex. 14, p.3 (decision in the Gerum case concluding that "Nationwide's

STD benefit plan is a type of leave offered to its employees").[6] The Wisconsin ALJ is placed in the position of construing plan terms. Because the WFMLA claim is not entirely independent of the federally-regulated ERISA plan, it falls within the scope of §1132(a)(1)(B) so as to be completely pre-empted. <u>Davila</u>, 542 U.S. at 213-214; <u>Briscoe</u>, 444 F.3d at 499-500.

The third category of pre-emption occurs when the state law binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.  The ALJ in the <u>Gerum</u> case concluded that "Nationwide, <u>through its STD plan administrators</u>, violated the [WFMLA] when it denied Gerum's request to substitute paid [STD] leave for leave under the [WFMLA][.]" Plaintiffs' Ex. 14, p. 2 (emphasis supplied).  Because the ALJ concluded that Nationwide and the Committee violated the FMLA, this effectively placed Nationwide, as an employer, and the Committee, as Plan Administrator, in the position of having to follow the WFMLA in the future to avoid violating state law, rather than applying the terms of the Plan and the law of ERISA.  The WFMLA substitution provision thus effectively binds employers to pay benefits to which the employee is not entitled under an ERISA plan if they wish to avoid violating §103.10(b).

---

[6]The issue of whether the ALJ in <u>Gerum</u> correctly decided that the Plan's STD benefits fell within the category of "paid or unpaid leave of any other type provided by the employer" which may be substituted within the meaning of §103.10(b), <u>i.e.</u>, whether the ALJ correctly interpreted state law, is not before the court. Rather, this aspect of plaintiffs' pre-emption claim concerns whether a Wisconsin ALJ, acting under the authority of §103.10(b), invades the exclusive province of ERISA by evaluating STD benefits and determining that they qualify for substitution, where those benefits are defined by the terms of its ERISA Plan, and the authority to construe Plan terms and determine eligibility for benefits is reserved under the Plan to the Committee as Plan administrator.

The WFMLA also precludes uniform administrative practices. Nationwide has over thirty-two thousand employees spread across forty-nine states. Hearing Tr., p. 15. Through the Plan, Nationwide provides a standard set of benefits to all associates. Maintaining the same level of benefits aids in the administration of benefits and assists Nationwide in estimating funding needs. Hearing Tr., p. 17. The WFMLA substitution provision and the ERD enforcement mechanisms put Nationwide's uniform administrative practices in jeopardy with regard to the two hundred-plus Wisconsin employees. The WFMLA also subjects Nationwide to the added burden of having to defend against WFMLA substitution claims in administrative proceedings before the ERD and in appeals to the Wisconsin courts. Plan funding for Wisconsin associates would have to be adjusted. Since the decisions of the Wisconsin ALJs have no precedential value, Nationwide's liability from one case to the next would be uncertain. The Wisconsin administrative scheme thus runs counter to the purpose of ERISA to "induce employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct[.]" Rush Prudential, 536 U.S. at 379. If STD benefits are available for substitution in Wisconsin, Nationwide might have to charge Wisconsin employees more for the coverage and Wisconsin employees would receive a benefit which Nationwide employees in other states are not entitled to, both which would go against Nationwide's equity philosophy of providing a standard set of benefits. Hearing Tr., pp. 63-64.

The court concludes that insofar as the WFMLA substitution provision is invoked to require the payment of STD benefits provided

by Nationwide pursuant to the Plan, it is pre-empted both under §1144(a) and under conflict pre-emption principles due to it's operation within the scope of §1132(a), ERISA's civil enforcement provisions.

D. Saving Clause Argument

Section 1144 of ERISA includes "saving clauses" which exempt certain state laws from pre-emption. Defendants rely on 29 U.S.C. §1144(d), which provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." Defendants then jump to the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, et seq., which provides:

> Nothing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act.

29 U.S.C. §2651(b). The FMLA further provides that "[t]he rights established for employees under this Act or any amendment made by this Act shall not be diminished by ... any employment benefit program or plan." 29 U.S.C. §2652(b). Defendants then argue that applying §1144(a), ERISA's general pre-emption provision, to the WFMLA substitution provision would impair the purpose of §2651(b), a "law of the United States," which is to encourage states to provide greater family and medical leave rights than those required under the FMLA, thus violating §1144(d).

Defendants point to the legislative history of the FMLA, and argue that this legislative history compels the conclusion that Congress, in enacting the FMLA, did not intend for ERISA to pre-empt

40

state FMLA laws.  Defendants are joined in this argument by the Department of Labor ("DOL"), which has filed an amicus brief. Defendants argue that the views of the DOL in this case are entitled to deference by this court.

In attempting to resolve the meaning of a statute, the first step is to look at the language of the statute itself.  United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989).  If the statute's language is plain, the inquiry is at an end, and the "sole function of the courts is to enforce it according to its terms."  Id. (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)).  The plain meaning of legislation is conclusive except in the rare case where the literal reading of a statutory term would compel an odd result or would be inconsistent with Congress' intention.  Public Citizen v. United States Dept. of Justice, 491 U.S. 440, 454-55 (1989); Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982).

If the statute is ambiguous, then courts defer to the agency's interpretation of the statute, even in a legal brief, unless the interpretation is plainly erroneous or inconsistent with the regulations, or if there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.  Talk America, Inc. v. Michigan Bell Telephone Co., ___ U.S. ___, 131 S.Ct. 2254, 2260-61 (2011); Chase Bank USA, N.A. v. McCoy, ___ U.S. ___, 131 S.Ct. 871, 880 (2011).

This court's consideration of the DOL's interpretation of the FMLA is governed by Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  The first issue to be

41

addressed is whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter. "'Where the language of the regulation is clear and plain, not only is there no reason to let the [agency] offer an interpretation of it, and no reason to consult the legislative history, but there is every reason not to do so.... The reason for this requirement is obvious: through excursions into legislative history, a writer can find support for virtually any position.'" Jewish Hospital, Inc. v. Secretary of Health and Human Servs., 19 F.3d 270, 274 (6th Cir. 1994)(quoting Brown v. Rock Creek Mining Co., Inc., 996 F.2d 812, 818 (6th Cir. 1993)(Batchelder, J. dissenting)).

If the statute is silent or ambiguous with respect to the specific issue, the question then becomes whether the agency's answer is based on a permissible construction of the statute. Id. at 842-43. In determining whether an agency's answer is based on a permissible construction of a statue, a reviewing "court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court could have reached if the question initially had arisen in a judicial proceeding." Id. at 843 n. 11. However, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." Id. at 843 n. 9.

This court concludes that the meaning of §29 U.S.C. §2651(b) is clear, and that there is no need to consider the legislative history of the FMLA or the DOL's opinion regarding ERISA pre-

emption.[7]  Section 2651(b) provides that "[n]othing in this Act or
any amendment made by this Act shall be construed to supersede any
provision of any State or local law that provides greater family or
medical leave rights than the rights established under this Act or
any amendment made by this Act." §2651(b) (emphasis supplied).
Section 2651(b) clearly limits its scope to provisions of the FMLA
and does not refer to any other federal law, including ERISA, which
might impact state laws concerning family and medical leave.

This court finds instructive the reasoning of the Supreme Court
in United States v. Locke, 529 U.S. 89, 105-06 (2000), in which the
Court addressed the scope of the saving clause found in Title I of
the Oil Pollution Act, 33 U.S.C. §2718(c),which permitted states to
impose liability or requirements "relating to the discharge or
substantial threat of a discharge, of oil." The Supreme Court, id.
at 107, concluded that this saving clause did not save the state
regulations from pre-emption by the Ports and Waterways Safety Act
("PWSA"). The Court noted Congress' use of the explicit qualifier
"this Act" as being "inconsistent with interpreting the savings
clauses to alter the preemptive effect of the PWSA or regulations
promulgated thereunder" and concluded that the clauses did not

---

[7]Even if this court were to consider the legislative history cited by the
parties, it provides no clear support for defendants' position concerning the
meaning of §2651(b); if anything, it serves to illustrate Judge Batchelder's
comments in Brown. For example, the legislative history includes comments made
by Wisconsin Senator Feingold concerning his belief that the provisions of the
FMLA were intended to prevent ERISA from undercutting state laws which permitted
the substitution of "accrued paid leave" for unpaid leave. 193 Cong. Rec. 2254
(Feb. 4, 1993). However, the STD benefits at issue in this case are not "accrued
paid leave." Additional legislative history in the form of a letter from the
Congressional Research Service stated that "ERISA, however, would continue to
preempt [relevant state and local family leave laws] insofar as they relate to
any employee benefit plans. Nothing in the family Leave bill would directly or
indirectly amend or alter the preemption provisions of ERISA." Ex. R., 139 Cong.
Rec. H396-03, *H412 (Feb. 3, 1993).

"extend to subjects addressed in the other titles of the Act or other acts." Id. at 106.  The Court further stated, "We decline to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law." Id. at 106.

The Court in Locke also addressed the comment in its previous decision in Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947), indicating that the Court should "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. at 107-108.  The Court observed that the "assumption" of nonpre-emption "is not triggered when the State regulates in an area where there has been a history of significant federal presence. Id. at 108.  The Court then noted that Congress "has legislated in the field [of national and international maritime commerce] from the earliest days of the Republic, creating an extensive federal statutory and regulatory scheme" and that "[n]o artificial presumption aids us in determining the scope of appropriate local regulation under the PSWA[.]" Id.

In the instant case, by using the phrase "this Act" in §2651(b), Congress clearly indicated its intent that no provision of the FMLA be construed as limiting the states from requiring greater leave benefits, while placing no limitations on the pre-emptive effect of other federal laws, such as ERISA.  The broad construction of §2651(b) advocated by defendants would impact the extensive regulatory and administrative scheme of employee benefit plans established under ERISA.  No presumption against pre-emption of state laws applies to this court's analysis of the saving clauses in this case in light of the extensive federal statutory and

44

regulatory schemes inherent in both ERISA and the federal FMLA.

The court further concludes that no intent on the part of Congress to preclude the pre-emption of state family and medical leave laws by ERISA can by gleaned from §2652(b).  This section provides that "[t]he rights established for employees under <u>this Act</u> or any amendment made by <u>this Act</u> shall not be diminished by ... any employment benefit program or plan." §2652(b) (emphasis supplied).  This section simply indicates Congress' intent that employment benefit programs or plans must comply with the federal FMLA.  It says nothing about a plan's compliance with state laws, nor can it reasonably be read so broadly as to conclude that Congress intended for ERISA employee benefit plans to be bound by any and all state laws enacted as a result of the leeway afforded the states under §2651(b).

The analysis of the Supreme Court in <u>Shaw</u> is also applicable to the instant case.  In <u>Shaw</u>, 463 U.S. at 100-108, the Supreme Court considered a multi-layered saving clause argument based on ERISA §1144(d) similar to that made by defendants here.  The officials in that case argued that certain state civil rights laws were not pre-empted by ERISA based on the combination of §1144(d), which precludes ERISA from invalidating, impairing, or superseding any law of the United States, and the saving clause in Title VII of the Civil Rights Act of 1964 ("Title VII"), which provides:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

42 U.S.C. §2000e-7.  The Supreme Court held that the court of

45

appeals properly rejected "the simplistic 'double saving clause' argument–that because ERISA does not pre-empt Title VI, and Title VII does not pre-empt state fair employment laws, ERISA does not pre-empt such laws." Id. at 101 n. 22. The Court noted that "since Title VII's saving clause applies to all state laws with which it is not in conflict, rather than just to nondiscrimination laws, and since many federal laws contain nonpre-emption provisions, the double saving clause argument, taken to its logical extreme, would save almost all state laws from pre-emption." Id. The Court also stated that although Title VII encourages states to enact fair employment laws providing greater substantive protection than Title VII, there was "no statutory language or legislative history suggesting that the federal interest in state fair employment laws extends any farther than saving such laws from pre-emption by Title VII itself." Id. at 103 n. 24.

The Court then observed that Title VII requires recourse to available state administrative remedies, and the Equal Employment Opportunity Commission frequently refers charges of discrimination to the state agencies. Id. at 101-02. The Court concluded that, in light of the importance of state fair employment laws to the federal enforcement scheme, "pre-emption of the Human Rights Law would impair Title VII to the extent that the Human Rights Law provides a means of enforcing Title VII's commands." Id. at 102. However, the Court then noted that pre-emption would not impair Title VII within the meaning of §1144(d) to the extent that the state laws prohibited employment practices which were lawful under Title VII. Id. at 103. The Court noted that "[a]lthough Title VII does not itself prevent States from extending their

46

nondiscrimination laws to areas not covered by Title VII, it in no way depends on such extensions for its enforcement." Id. (internal citations omitted).  The Supreme Court also cautioned against applying §1144(d) too expansively, stating:

> While [§1144(d)] may operate to exempt provisions of state laws upon which federal laws depend for their enforcement, the combination of Congress' enactment of an all-inclusive pre-emption provision and its enumeration of narrow, specific exceptions to that provision makes us reluctant to expand [§1144(d)] into a more general saving clause."

Id. at 104.

Under Shaw, it is necessary to look to the scope of the FMLA. The FMLA guarantees twelve weeks of unpaid leave each year for employees with a serious medical condition. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 84 (2002); Allen v. Butler County Commissioners, 331 Fed.App'x. 389, 392 (6th Cir. 2009).  However, the FMLA does not create or supplement employer benefits. Santos v. Knitgoods Workers' Union, Local 155, 252 F.3d 175, 178 (2d Cir. 2001).  The FMLA authorizes the substitution of paid leave for FMLA leave.  The FMLA provides that where leave is sought in the case of the birth of a child, placement of a child in the family, or to care for a spouse, "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave" under the FMLA.  29 U.S.C. §2612(d)(2)(A); Brotherhood of Maintenance of Way Employees v. CSX Transportation, Inc., 478 F.3d 814, 817 (7th Cir. 2007).  The statute makes no reference to short-term disability benefits.

In the case of a health condition of the employee, the eligible employee may elect "to substitute any of the accrued paid vacation

leave, personal leave, or medical or sick leave of the employee for"
FMLA leave.  29 U.S.C. §2612(d)(2)(B).  This section also refers to
"leave" and does not discuss short-term disability benefits.  This
subsection also provides that "nothing in this subchapter shall
require an employer to provide paid sick leave or paid medical leave
in any situation in which such employer would not normally provide
any such paid leave."  Id.

The FMLA regulations also address an employee's substitution
rights.  The regulations provide that the term "substitute" means
"that the paid leave provided by the employer, and accrued pursuant
to established policies of the employer, will run concurrently with
the unpaid FMLA Leave."  29 C.F.R. §825.207(a).  "An employee's
ability to substitute accrued paid leave is determined by the terms
and conditions of the employer's normal leave policy."  Id.  Leave
taken "pursuant to a disability leave plan would be considered FMLA
leave for a serious health condition and counted in the leave
entitlement permitted under FMLA[.]" 29 C.F.R. §825.207(d).
However,

> [b]ecause leave pursuant to a disability benefit plan is
> not unpaid, the provision for substitution of the
> employee's accrued paid leave is inapplicable, and
> neither the employee nor the employer may require the
> substitution of paid leave.  However, employers and
> employees may agree, where state law permits, to have
> paid leave supplement the disability plan benefits, such
> as in the case where a plan only provides replacement
> income for two-thirds of an employee's salary.

Id.  The above regulation reveals that the DOL has distinguished
between "accrued paid leave" and "disability plan benefits" in
drafting the regulations applicable to the FMLA, and that "leave
pursuant to a disability benefit plan" does not fall within the

48

scope of the FMLA's substitution of "paid leave" provision.

The WFMLA substitution provision, as interpreted by Wisconsin judges, requires the substitution of short-term disability benefits at the election of the employee.  In contrast, the above provisions of the FMLA and its regulations do not require the substitution of short-term disability benefits, as distinguished from forms of "accrued leave" such as "accrued paid vacation leave, personal leave, or medical or sick leave" of the employee.  In fact, §825.207(d) indicates that substitution of a "disability plan benefit" is not permitted under the FMLA.  Because the WFMLA, as interpreted, makes it unlawful for an employer to refuse to permit substitution of short-term disability plan benefits, whereas the FMLA does not, ERISA pre-emption of the WFMLA substitution provision would not impair the federal FMLA.  See Shaw, 463 U.S. at 103. Therefore, the combined effect of §1144(d) and §2651(b) does not save the WFMLA substitution provision from ERISA pre-emption. Likewise, because the FMLA does not require the substitution of short-term benefits as mandated under the WFMLA, the refusal of the Plan to permit an employee to substitute such benefits would not diminish any employee rights established by the FMLA in violation of §2652(b).

Plaintiffs also argue that §1144 would not save the WFMLA substitution provision from ERISA conflict pre-emption. In Davila, 542 U.S. at 216-218, and Pilot Life, 481 U.S. at 48-57, the Supreme Court considered the argument that the plaintiffs' state law claims were saved from pre-emption under another ERISA saving clause, 29 U.S.C. §1144(b)(2)(A), which provides that "nothing in this subchapter shall be construed to exempt or relieve any person from

49

any law of any State which regulates insurance, banking, or securities." The Supreme Court Concluded that because the claims fell within the scope of ERISA's civil enforcement provisions found in 29 U.S.C. §1132(a), "even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." Davila, 542 U.S. at 217-18; see also Pilot Life, 481 U.S. at 57 (state law claim asserting improper processing of a claim for benefits under an ERISA-regulated plan not saved by §1144(b)(2)(A)); American Council of Life Insurers, 558 F.3d at 607 (even if state law regulates insurance, it may be pre-empted by ERISA's civil enforcement provisions). The Supreme Court reasoned that Congress

> clearly expressed an intent that the civil enforcement provisions of ERISA [§1132(a)] be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of [§1132(a)] would pose an obstacle to the purposes and objectives of Congress.

Pilot Life, 481 U.S. at 52.

Therefore, saving clauses such as §1144(b)(2)(A) "must be interpreted in light of the congressional intent to create an exclusive federal remedy in ERISA [§1132(a)]." Davila, 542 U.S. at 217.[8] Under the reasoning in Davila and Pilot Life, a claim under

---

[8]The Supreme Court has also applied this reasoning to other areas. In Geier v. American Honda Motor Co., Inc., 529 U.S. 861, 869-74 (2000), the Court concluded that a savings clause in the National Traffic and Motor Vehicle Safety Act did not bar the application of conflict pre-emption principles, and that the state cause of action was pre-empted due to conflict pre-emption. See also American Tel. & Tel. Co. v. Central Office Telephone, Inc., 524 U.S. 214, 227 (1998)(clause in Communications Act of 1934 purporting to save "the remedies now existing at common law or by statute" defeated by overriding policy of the filed-rate doctrine); Adams Express Co. v. Croninger, 226 U.S. 491, 507 (1913)(saving clause will not sanction state laws that would nullify policy expressed in

the substitution provision of the WFMLA for substitution of benefits afforded under an ERISA plan falls within the scope of, and is completely pre-empted by §1132(a), notwithstanding §2651(b)'s purpose of permitting state law benefits which exceed those required under the FMLA.

This court concludes that the WFMLA substitution provision is not saved from ERISA pre-emption by the operation of §2651(b) and §1144(d).

E. Request for Permanent Injunction

1. Applicable Standards

Plaintiffs seek a permanent injunction prohibiting defendants from processing, investigating or proceeding to hearing on any claim against Nationwide for the payment of STD income benefits pursuant to the WFMLA's substitution provision. As this court held in its order of September 27, 2010, the state defendants, named in their official capacities, are the parties capable of enforcing this remedy. See Doc. 60 at 16-17. Defendant Gassman, as Secretary of the DWD, and defendant Ware, Administrator of the ERD, the division within the DWD which administers the WFMLA, including receiving and investigating complaints, holding hearings, issuing decisions, and ordering relief under the WFMLA, occupy positions of authority which will enable them to ensure that the DWD and the ERD complies with any injunctive relief ordered by this court. Defendant Van Hollen, Attorney General of the State of Wisconsin, and head of the Wisconsin Department of Justice, has the authority to appear on behalf of an official of the DWD and the ERD in an action to enforce

---

federal statute; "the act cannot be said to destroy itself" (internal quotation marks omitted)).

the provisions of the WFMLA.  He is also in a position to ensure compliance with the terms of any order providing for injunctive and declaratory relief.

To secure a permanent injunction, upon establishing a constitutional violation after a trial on the merits, plaintiffs must demonstrate: (1) that they will suffer a continuing irreparable injury if the court fails to issue an injunction; (2) that there is no adequate remedy at law; (3) that, considering the balance of hardships between the plaintiffs and the defendants, a remedy in equity is warranted; and (4) that it is in the public's interest to issue the injunction.  See American Civil Liberties Union of Kentucky v. McCreary County, Ky., 607 F.3d 439, 445 (6th Cir. 2010); Audi AG v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006); Kallstrom v. City of Columbus, 136 F.3d 1055, 1067 (6th Cir. 1998).  Plaintiffs have prevailed in their argument that the substitution provision of the WFMLA is pre-empted by ERISA.  Hence, the court must determine whether an injunction is appropriate.

2. Continuing Irreparable Injury/No Adequate Legal Remedy

To secure an injunction, the plaintiffs must establish that they will be subject to continuing irreparable injury if an injunction is not issued, and that they have no adequate legal remedy.  Plaintiffs have shown that they are at considerable risk of having to defend against WFMLA administrative claims for Plan STD benefits  based on the WFMLA substitution provision, which is pre-empted by ERISA.

Defendants argue that this case is no more than an attempt to relitigate the Gerum matter.  They note that the Gerum matter was the first claim for STD benefits asserted under the WFMLA

substitution provision against Nationwide's Plan, and that Nationwide has failed to demonstrate that it is at risk for similar claims in the future. The claim for substitution in that case was not a one-time occurrence  The evidence establishes that Nationwide employs over two hundred associates in Wisconsin. After the <u>Gerum</u> matter, another Nationwide associate made inquiries about substituting STD benefits for WFMLA unpaid leave so that she could extend her maternity leave. It can reasonably be expected that Nationwide associates will continue to have babies in the future. Further, future substitution requests need not be limited to maternity leave. For example, associates could request to substitute additional leave after having surgery or a major illness so as to have additional time to recover, even though they do not meet the plan definition for being "STD disabled." ALJ Olstad held in <u>Richtig</u> that STD benefits were subject to substitution in the case of an employee who had foot surgery. It is reasonable to expect that Nationwide associates in Wisconsin will face surgeries or major illnesses in the future.

It is also unreasonable to expect that Nationwide associates will remain ignorant of the WFMLA substitution provision. At least one associate inquired about substituting STD benefits for additional maternity leave after hearing about the <u>Gerum</u> case. <u>See</u> Plaintiffs' Ex. 15. It is safe to expect that employees will learn about this provision by word of mouth. Further, as plaintiffs noted in their post-trial brief, "keeping the Company's employees in the dark is not an appropriate response, if they are entitled to WFMLA substitution of ERISA benefits, they are entitled to be told." Doc. 87, p. 52. Defendants also note that many claims under the WFMLA

are dismissed at the investigative stage without the employer's knowledge that a claim has been filed.  However, the fact that some complaints are dismissed at the investigative stage for lack of probable cause says nothing about the substitution claims at issue here.  In the Gerum case, the investigator found probable cause and referred the matter for a hearing.

Defendants also argue that since the decisions of the ALJs are not binding precedent, there is no way to be sure that other ALJs in the future would rule in favor of Nationwide associates making similar substitution claims.  The Gerum case has been settled; however, it may still be cited as persuasive authority and relied on by Wisconsin ALJs called upon to rule on similar requests for substitution in the future.  The mere existence of the Gerum decision as precedent, albeit nonbinding, makes it more likely that an ALJ would rely on it in addressing a future request to substitute Nationwide STD benefits.  In addition, Gerum is not the only case in which substitution of STD benefits was ordered by Wisconsin courts or ALJs.  The record reveals that a Wisconsin court in Northwestern Mutual Life and ALJ Olstad in Richtig, a WFMLA administrative proceeding predating the Gerum matter, held that STD benefits were subject to substitution under the WFMLA.  In addition, ALJ Jakubowski ordered the substitution of benefits from the employer's ERISA sick pay plan in an order which was affirmed by the Wisconsin Supreme Court in Aurora Medical Group, where the court held that the WFMLA substitution provision was not pre-empted by ERISA.  236 Wis.2d at 25.  While the previous decisions of ALJs are not binding precedent, decisions of the highest court of the State of Wisconsin are binding, and it is highly likely that any ALJ

54

called upon to consider an employer's pre-emption defense would reject that defense in light of Aurora Medical Group.  The evidence also establishes that if a Nationwide associate filed a claim with the ERD in the future, alleging a denial of the opportunity to substitute STD benefits, or even LTD benefits or disability retirement benefits, the ERD would exercise jurisdiction over the claim.  Hearing Tr., p. 94.

The fact that the Gerum case was settled does not mean that the relief plaintiffs seek stems solely from the unsatisfactory resolution of that case.  By settling the Gerum matter, plaintiffs did not waive their right to contest in another proceeding the ongoing violations of ERISA resulting from the pre-emptive effect of the WFMLA substitution provision and the real threat this provision posed to the integrity of the Nationwide ERISA Plan and its administration.

Plaintiffs have also established that continued enforcement of the WFMLA substitution provision by requiring them to pay benefits under the STD plan would place them in the untenable position of violating either the WFMLA or ERISA.  Under ERISA, fiduciaries of the plan must administer the plan "in accordance with the documents and instruments governing the plan," 29 U.S.C. §1104(a)(1)(D), making payments to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan." 29 U.S.C. §1002(8).  In the Gerum case, the ALJ ordered that STD benefits be paid to an associate who was not disabled, and further ordered that her Your Time account be credited for the eight days of leave she took under the WFMLA, contrary to the terms of the Plan and contrary to their fiduciary obligations as plan administrators.  The continued

55

enforcement of the WFMLA substitution provision places the Committee in a position of choosing whether to violate Wisconsin law by refusing to honor an associate's request for substitution or to violate ERISA by awarding benefits from the Trust in violation of the terms of the Plan and their fiduciary duties.  See Boggs, 520 U.S. at 844 (recognizing that pre-emption is required where compliance with both federal and state regulations is a physical impossibility); Denny's, 364 F.3d at 527 (where state law violates an ERISA plan, "the plan's fiduciary faces [the] Hobson's choice" between obeying state law while risking a violation of the provisions of the plan and ERISA, or raising pre-emption as a defense, risking a violation of state law); NGS American, Inc. v. Jefferson, 218 F.3d 519, 529 (6th Cir. 2000)(noting that challenging regulations by violating them and then raising ERISA pre-emption as a defense in state enforcement action would have risked breaking the law).

        In addition, plaintiffs face irreparable harm because, unless an injunction is issued, they will be required to defend WFMLA claims in Wisconsin administrative proceedings.  The court has concluded that these proceedings, insofar as they provide an enforcement scheme to obtain STD benefits from the Plan, are pre-empted by ERISA.  See Aetna Health, 542 U.S. at 209 ("any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted").  Plaintiffs will sustain injury because they will be forced to expend valuable time and resources defending their position during hearings over which the State of Wisconsin will

improperly assert jurisdiction.

Plaintiffs have also established that they face an imminent threat of irreparable injury due to Wisconsin's interpretation of the WFMLA substitution provision because it will impose additional burdens in the administration of the Plan. State regulation of plans creates the potential for fifty or more conflicting governance structures. <u>Helfman</u>, 573 F.3d at 390. Since Nationwide and its affiliated entities employ associates in forty-nine states, plaintiffs will incur additional administrative expenses by having to monitor the different requirements imposed by Wisconsin law. Nationwide will also face the risk of being ordered to pay benefits out of its general assets, in violation of the Trust Agreement, a Plan document.

In <u>Martin-Marietta Corp v. Bendix Corp</u>, 690 F.2d 558 (6th Cir. 1982), the Sixth Circuit upheld the award of a preliminary injunction to corporations who claimed that the Michigan Uniform Securities Act conflicted with federal law. The court concluded that the "unconstitutional application" of the Michigan law amounted to irreparable injury flowing from the denial of the plaintiffs' rights under federal securities laws. <u>Id.</u> at 568. Similarly, the continued enforcement of the WFMLA substitution provision in violation of the Supremacy Clause and ERISA, with all the ramifications discussed above, is sufficient to constitute irreparable injury for which plaintiffs have no adequate remedy at law.

<u>3. Balance of Hardships</u>

The above hardships to plaintiffs must be balanced against any hardships to the defendants and the Wisconsin Nationwide associates.

The State of Wisconsin has an interest in protecting the rights of employees within its borders, including substitution rights under the WFMLA.   However, neither the defendants nor the Wisconsin Nationwide associates have a right to the unconstitutional application of state law.   Martin-Marietta, 690 F.2d at 568. Defendants speculate that an injunction will create difficulties for ERD employees involved in the complaint process, who will be required to determine which claims fall within the scope of the injunction and which do not.   However, plaintiffs' request for injunctive relief does not extend to the totality of the WFMLA, or even to the WFMLA substitution provision in general.   Rather, it is narrowly tailored to encompass only ERD claims made by Nationwide associates under the WFMLA substitution provision for STD benefits. The Supreme Court in Shaw recognized that its interpretation of §1144(d), requiring only partial pre-emption of state fair employment laws by ERISA, "may cause certain practical problems" for courts and state agencies charged with the task of determining whether the employment practices prohibited by state law were also prohibited by Title VII, but noted that it seemed "more than likely ... that state agencies and courts are sufficiently familiar with Title VII to apply it in their adjudicative processes."   463 U.S. at 105-06.   The Court further stated that "those problems are the result of congressional choice and should be addressed by congressional action."   Id. at 106.   In comparison to the complexities of Title VII law, it should be fairly simple for ERD investigators and ALJs to identify claims filed by Nationwide associates for substitution of STD benefits.   The court can word an injunction in such a way as to permit ERD investigators to conduct

an investigation to the extent needed to determine whether the claim is in fact one for the substitution of Nationwide STD benefits.

The requested injunction is also in the best interests of the Wisconsin Nationwide associates.  Along with plaintiffs, they will have certainty as to what benefits they are entitled to, and will not have to engage in protracted litigation in Wisconsin courts while Nationwide pursues a pre-emption defense.  If an injunction is not entered, Wisconsin associates face the prospect of having their STD benefits discontinued, or having to pay more for those benefits to offset the additional costs of substitution.  An injunction is also in the best interests of all Wisconsin Nationwide associates and associates in other states who do not assert claims to substitute STD benefits.  All Plan participants have the right to expect that the Plan will be administered in accordance to its terms and ERISA, and that the Trust will not be depleted by claims paid in violation of ERISA.

## 4. Public Interest

The public interest would best be served by granting the injunction.  "It is in the public interest not to perpetuate the unconstitutional application of a statute." Martin-Marietta, 690 F.2d at 568.  In addition, "the public has no interest in the enforcement of laws in an unconstitutional manner." Id.; see also L.P. Acquisition Co. v. Tyson, 772 F.2d 201, 209 (6th Cir. 1985). The public does have an interest in furthering the purposes of ERISA, which include providing a uniform regulatory regime over employee benefit plans, Aetna Health, 542 U.S. at 208, offering employees enhanced protection for their benefits while avoiding the creation of a system that is so complex that administrative costs

59

or litigation expenses would unduly discourage employers from offering welfare benefit plans in the first place, <u>Varity Corp.</u>, 516 U.S. at 497, and inducing employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct, <u>Rush Prudential</u>, 536 U.S. at 379. The court concludes that granting the injunction would be in the public interest.

Having considered all of the factors relevant to the issuance of a permanent injunction, the court concludes that a permanent injunction is appropriate in this case.

<u>IV. Conclusion</u>

In accordance with the foregoing, the court concludes that Wis. Stat. §103.10(b), the WFMLA substitution provision, is pre-empted by ERISA insofar as it is applied to require the substitution of benefits provided by the STD Program of the Nationwide Insurance Companies and Affiliates Plan for Your Time and Disability Income Benefits. Plaintiffs are entitled to judgment declaring that:

1) the Nationwide Plan is an employee welfare benefit plan governed by ERISA;

2) the Benefits Administrative Committee is not required to grant substitution requests made pursuant to Wis. Stat. §103.10(b) for STD income benefits to associates who have not been found to be "STD Disabled" by the Committee;

3) Nationwide is not required to pay out of general assets substitution requests made pursuant to Wis. Stat. §103.10(b) for STD income benefits made by associates who have not been found to be "STD Disabled" by the Committee;

4) the Benefits Administrative Committee may administer the STD Program of the Plan and the Trust Fund in accordance with the

federal law of ERISA and disregard any conflicting requirement of Wis. Stat. §103.10(b).

Plaintiffs are also entitled to a permanent injunction prohibiting defendants from processing or investigating any substitution claims brought pursuant to Wis. Stat. §103.10(b) against Nationwide to benefits payable under the STD Program, beyond any investigation needed to verify the nature of the claim and whether the claim is in fact one for substitution of STD Program benefits, and prohibiting defendants from proceeding to a hearing on any claim made against Nationwide for the substitution of STD Program benefits pursuant to Wis. Stat. §103.10(b).

The clerk shall enter judgment in favor of plaintiffs.


Date: September 28, 2012          _____s/James L. Graham_____
                                  James L. Graham
                                  United States District Judge